UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAVON MARSHALL, et al.,

     Plaintiffs,

v.

ESPN INC., et al.,

Defendants.

No. Civil Action No. 3:14-cv-1945

Chief District Judge Kevin H. Sharp

MEMORANDUM OF CONFERENCE DEFENDANTS
IN SUPPORT OF RULE 12(b)(6) MOTION
TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

In this action, ten college athletes allege that they should be paid for the purported use of their "names, images and likenesses" in television broadcasts of games and in unidentified advertisements for such broadcasts. They assert claims against the "Conference Defendants" under Tennessee right of publicity laws, federal antitrust law, and the common law of unjust enrichment, conspiracy, and accounting.[1] To sustain each of these claims, plaintiffs must show that their rights of publicity have been violated. As a matter of law, however, plaintiffs have no publicity rights in the broadcasts of games, or in advertisements for such broadcasts. *See, e.g.*, Tenn. Code Ann. § 47–25–1101(a) ("no violation [occurs] if the use of a name, photograph, or likeness is in connection with any . . . sports broadcast"). Without being able to establish a violation of their rights of publicity, none of plaintiffs' claims survives, including their Sherman

---

[1] The Conference Defendants joining in this Memorandum are the Atlantic Coast Conference ("ACC"), Big East Conference, Inc. ("Big East"), Big 12 Conference ("Big 12"), The Big Ten Conference, Inc. ("Big Ten"), Conference USA ("C-USA"), Ohio Valley Conference ("OVC"), Pac-12 Conference ("Pac-12") and Southeastern Conference ("SEC").

Act claim, which fails under Section 4 of the Clayton Act because plaintiffs can show no injury to their "business or property." 15 U.S.C. § 15.[2] All of plaintiffs' purported claims against the Conference Defendants should therefore be dismissed with prejudice.[3]

## I. THE COMPLAINT

A.    <u>Pleadings Standards</u>.

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court established "ground rules" for District Courts to evaluate the allegations of a complaint. 550 U.S. 544, 545 (2007). *Twombly* does not allow a plaintiff to rely on legal conclusions couched as factual allegations, conclusory statements, or bare assertions, but requires factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* Thus, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted)); *see also Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 494 (6th Cir. 2014) ("the complaint must consist of more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'")

---

[2] The Clayton Act creates a private cause of action for violations of the Sherman Act and establishes requirements that a plaintiff must satisfy to assert a claim. *See, e.g.*, *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338-40 (1990).

[3] The plaintiffs have included both "Southeastern Conference d/b/a SEC Network" and "ESPN Inc. d/b/a SEC Network" as named defendants. The SEC Network is not an entity. ESPN Inc. operates a cable channel marketed as the SEC-ESPN Network under a license agreement with the SEC. The Court need not address these details, however, because for the reasons set forth in this Memorandum and the Memorandum of the Broadcast Defendants filed contemporaneously herewith, plaintiffs cannot state a claim against either the SEC or ESPN, in any alleged capacity.

In this regard, if and to the extent that plaintiffs seek to assert a Lanham Act claim against the SEC, the SEC adopts and relies upon the Lanham Act arguments in the Broadcast Defendants' brief. (No Lanham Act claims are asserted against Conference Defendants, and it is unclear whether the plaintiffs' Lanham Act claim against "Broadcast and Licensing Defendants" is intended to include the SEC.)

2

(quoting *Twombly*, 550 U.S. at 555).

B.     Allegations of Complaint.

The Complaint includes only a handful of well-pleaded facts that this Court may consider under *Twombly,* each of which rests on the misconception that participants in broadcasts of sporting events, and advertisements for those broadcasts, have publicity rights for those broadcasts and advertisements.

The Complaint starts by alleging that each plaintiff played college sports, appeared in television broadcasts of regular season games and bowl games, and was prohibited by the rules of the NCAA and various conferences from being compensated (beyond their scholarships) for alleged uses of their names, images and likenesses.   Compl. ¶¶ 1-20.  The plaintiffs allege that they played for different universities in different conferences, with three players each from the University of Tennessee and Vanderbilt University, which are members of the SEC, and four players from other schools in other conferences.[4]  *Id.*   Except for a handful of games, the plaintiffs do not identify the broadcasts in which they appeared.  *Id.*   At no point in the Complaint do the plaintiffs identify any advertisement in which any plaintiff appeared.

Plaintiffs' remaining "factual" allegations appear in paragraphs 91 to 147 of the Complaint.  Plaintiffs cite various NCAA and conference rules that require student-athletes to be amateurs.   Compl. ¶¶ 91-104.   Plaintiffs then note that the NCAA and various Conference Defendants have licensed broadcasting rights to various "Broadcast Defendants," and identify a

---

[4] None of the plaintiffs played for schools in the ACC, Big East, Big 12, The Big Ten, or C-USA, even though those conferences are named as defendants.

3

handful of such agreements. Compl. ¶¶ 105-119.[5] Apart from alleging the existence of these agreements, plaintiffs assert that:

- The broadcast agreements "exclude Student Athletes from participating in the marketplace for the licensing, sale and use of Student Athletes' names, images and likenesses." Compl. ¶ 109.

- The Broadcast and Licensing Defendants do not negotiate or enter into agreements with Student Athletes, but only with the NCAA, Conference Defendants, and their member institutions. Compl. ¶ 110.

- "The Student Athletes are leaving [sic] the economic driving force behind the lucrative business of college sports, the Student Athletes, unrepresented and uncompensated for their services." Compl. ¶ 111.

- "These agreements effectually adopt and implement the above quoted restrictive NCAA and Conference Defendant bylaws and rules, resulting in an anticompetitive marketplace in which all of the Defendants unlawfully profit off of Class Members' names, images and likenesses." Compl. ¶ 112.

- "In spite of the NCAA and Defendants' multi-billion dollar agreements, the Student Athlete, receives nothing or, at most, the cost of attendance." Compl. ¶ 114.

This section then includes allegations about benefits provided to student-athletes, such as meal allowances and medical benefits, as well as revenues allegedly generated by the University of

---

[5] Plaintiffs use the wrong term to describe the Broadcast Defendants. "Network Defendants" would be a more accurate description. The Conference Defendants use the Complaint's terminology here for consistency.

Kentucky basketball team, scholarship revocation rules, graduation rates, living standards of college players, and the "fair market value of the average Student Athlete." Compl. ¶¶ 115-119.[6]

Paragraphs 120 through 123 allege in the most conclusory fashion possible that Licensing Defendants have "entered into anticompetitive multimedia agreements with NCAA member schools" that "purportedly encompass the commercial value of Student Athletes' rights of publicity, yet Licensing Defendants refuse to negotiate with Student Athletes." The Licensing Defendants purportedly also "assist in the management of intellectual property licensing programs" and "act as a conduit in licensing college teams' intellectual property including licensing of Student Athlete publicity rights." Compl. ¶¶ 121, 122. Even to a reader informed (independently from the Complaint) about the businesses of the Licensing Defendants, it is not possible to determine from these allegations what the Licensing Defendants have allegedly done wrong. No Conference Defendant is mentioned in this section of the Complaint.

Paragraphs 124 to 131 attempt to allege a "relevant market," contending that the market for broadcasting FBS football and Division I basketball games is national, worth billions of dollars, and includes "venue access; rights to use and reference team logos and trademarks; and rights to use Student Athletes' names, images and likenesses." Plaintiffs contend that "[i]n the absence of Defendants' conspiracy, Student Athletes would become natural participants in the marketplace of use and broadcast of their names, likenesses and/or images."

Finally, in paragraphs 132 to 147, plaintiffs allege that the NCAA prohibits student-athletes from participating in NCAA events unless they sign a form permitting their name or picture to be used to promote NCAA championships, events, activities and programs, that the form does not convey the power or authority to sell or license NIL rights, and that the student-

---

[6] Although the Conference Defendants accept these allegations as true for purposes of their Rule 12(b)(6) motion, many of these allegations are incorrect factually.

5

athletes have no choice but to sign the form because they have no other reasonable options for extending their careers beyond high school. The Complaint alleges that the form is "void" because it is sometimes signed by minors or others "barely 18 years old," and is a contract of adhesion and unenforceable (even though no plaintiff alleges that he signed when a minor). Concluding their "factual" allegations, plaintiffs assert that "Broadcast Defendants' misappropriation of Class Members' images, names or likenesses extends to nationwide broadcasting and advertising of games in which many Class Members have played," and that "Licensing Defendants' misappropriation . . . extends to nationwide broadcasting and group licensing members' rights [sic] to various television networks."

## II. ARGUMENT

Plaintiffs' Complaint must be dismissed because individual participants have no rights of publicity in game broadcasts or advertisements for game broadcasts. In the absence of any cognizable right of publicity, plaintiffs' antitrust, unjust enrichment, common law conspiracy, and accounting claims fail as well. All of the claims should be dismissed with prejudice because plaintiffs cannot allege any facts that would give rise to a plausible and legally cognizable claim.

The Complaint is also subject to dismissal for a number of other reasons, many of which are set forth in the submittal of the Broadcast Defendants. The Conference Defendants emphasize, however, that, while it is perfectly appropriate for it to do so, this Court need not reach arguments based on copyright law or First Amendment law, or address the numerous pleading flaws in plaintiffs' antitrust claim. The entire Complaint fails because individual participants have no right of publicity in a broadcast of a sporting event, or in an advertisement for such a broadcast.

6

A.   Right of Publicity Claims.[7]

Plaintiffs erroneously assume that game participants have a right of publicity with respect to broadcasts of sporting events, and to advertisements for those broadcasts.  Apart from being inherently impractical (any single participant could hold out and prevent the broadcast), plaintiffs' position has been rejected repeatedly by controlling legal authorities.  In fact, the Tennessee statute on which plaintiffs' claims rely, the Tennessee Personal Rights Protection Act ("TPRPA"), Tenn. Code Ann. § 47–25–1107(a), specifies that participants have no publicity rights in broadcasts or advertisements for sporting events.  The plain terms of that statute, by themselves, require dismissal of plaintiffs' claims.  Moreover, in the long history of broadcast law, no state has recognized the right of publicity that plaintiffs attempt to assert here.  A short explanation of the law of broadcast rights illustrates why no such right exists.

State statutes and judicial decisions uniformly recognize that the right to license a sporting event vests exclusively in the promoter or producer of the event.  Beginning almost a century ago, courts first articulated this exclusivity as a property right.  *See, e.g.*, *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 624-28 (7th Cir. 2011) (the "producer of entertainment is entitled to charge a fee in exchange for consent to broadcast").  Having gained control of the venue, the promoter may place conditions upon entry—and may grant permission to broadcast the game to only one, or to a limited number, of broadcasters.  *See, e.g.*, *Pittsburgh Athletic Co. v. KQV Broad. Co.*, 24 F. Supp. 490, 492-93 (W.D. Pa. 1938) (holding that Pittsburgh Pirates had a "property right" to "sell[] exclusive broadcasting rights"); *Twentieth Century Sporting Club v. Transradio Press Serv.*, 165 Misc. 71 (N.Y. Sup. Ct. 1937).

---

[7] What plaintiffs call a "misappropriation of name and likeness" is actionable, if at all, as a violation of the right of publicity.  *See, e.g.*, *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 897 (6th Cir. 1991) (use of name, image or likeness actionable under Tennessee law only if use violated a right of publicity).

7

The case law over the past 75 years has developed uniformly, and it is now settled that the promoter of the event owns the broadcast rights. *See, e.g.*, *SW. Broad. Co. v. Oil Center Broad. Co.*, 210 S.W.2d 230, 232 (Tex. Civ. App. 1947) ("The right [of the promoter] to broadcast a description of the action of an athletic contest is a valuable right. It has and should be protected by injunction."); *Okla. Sports Props., Inc. v. Indep. Sch. Dist. No. 11*, 957 P.2d 137, 139 (Okla. Civ. App. 1998); *Post Newsweek Stations-Conn., Inc. v. Travelers Ins. Co.*, 510 F. Supp. 81, 85-86 (D. Conn. 1981).[8]

A right of publicity arises when a person's name, image or likeness is used to promote a product or service, not when that person simply appears in public. *See Restatement (Third) of Unfair Competition* § 46, cmt. a (recognizing that the right of publicity tort protects purely economic, proprietary injuries caused by the non-consensual use of one's name or likeness). As the Sixth Circuit has noted, "[t]he right of publicity protects the identity of a celebrity from exploitive commercial use. The theory of the right is that a celebrity's identity can be valuable in the promotion of products, and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity." *Parks v. LaFace Records*, 329 F.3d 437, 459 (6th Cir. 2003) (internal quotations and citations omitted).

Against this backdrop, plaintiffs rely exclusively on Tennessee law as the source of their purported right of publicity claims, citing TPRPA as the source of their "First Cause of Action"

---

[8] To ensure the exclusivity and concomitant value of their broadcast rights, promoters typically condition issuance of press credentials on the media agreeing to respect the exclusivity of the broadcast rights granted for a game or event. The Tennessee Attorney General has opined that these restrictions are valid, for the reasons explained in the text above, thereby confirming that the cited cases are consistent with Tennessee law. *See* Tn. Atty. Gen. Op. 10-60; *see also Foto USA, Inc. v. Bd. of Regents of the Univ. Sys. of Fla.*, 141 F.3d 1032 (11th Cir. 1998) (confirming that state entity can license exclusive broadcast rights to events without violating First Amendment); *D'Amario v. Providence Civic Ctr. Auth.*, 639 F. Supp. 1538, 1544 (D.R.I. 1986) (same).

and Tennessee common law for their "Second Cause of Action." From a close examination of the Complaint, it appears plaintiffs contend that only advertisements for broadcasts violate TPRPA, but that both advertisements and broadcasts violate their common law rights. *See* Compl. ¶¶ 151, 159. There can be no such distinction because TPRPA and Tennessee common law are co-extensive, and the common law affords no rights in addition to those established by TPRPA. *Moore v. Weinstein Co.*, 3:09-CV-00166, 2012 WL 1884758, at *30 (M.D. Tenn. May 23, 2012) ("Tennessee recognizes a statutory right of publicity under the TPRPA (as well as a coextensive common law right)"), *aff'd*, 545 F. App'x 405 (6th Cir. 2013); *Gauck v. Karamian*, 805 F. Supp. 2d 495, 500 n.5 (W.D. Tenn. 2011) ("Tennessee's common law and statutory rights of publicity are co-extensive"); *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 99 (Tenn. Ct. App. 1987). Whether plaintiffs purposefully make this distinction in their claims for relief is irrelevant, however, because neither TPRPA nor the common law affords plaintiffs any rights in broadcasts or advertisements for broadcasts.

1. *Broadcasts.* As noted above, the plain language of TPRPA reveals that plaintiffs have no claim pertaining to game broadcasts. TPRPA expressly provides that "[i]t is deemed a fair use and no violation of an individual's rights shall be found, for purposes of this part, if the use of a name, photograph, or likeness is in connection with any news, public affairs, or sports broadcast or account." Tenn. Code Ann. § 47-25-1107(a). The statute could not be more explicit. Plaintiffs have no publicity rights in sports broadcasts. Because uniform precedent confirms that Tennessee common law affords plaintiffs no broader rights than those set forth in TPRPA, plaintiffs' common law publicity claims with respect to broadcasts must also be rejected. *See Moore*, *supra*; *Gauk; supra*. No further analysis is needed. Under Tenn. Code Ann. § 47-25-1107(a), plaintiffs have no claim.

9

Further examination of the statute reconfirms the conclusion that TPRPA has no applicability to sports broadcasts. Section 47-25-1105(a), which articulates the limited statutory scope of liability, makes it clear that TPRPA prohibits only the use of a person's name, image, or likeness in an *advertising* or *endorsement* context (*e.g.*, Peyton Manning endorsing Buick):

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual . . . **for purposes of advertising products, merchandise, goods, or services** . . . shall be liable to a civil action.

Tenn. Code Ann. § 47-25-1105(a) (West) (emphasis added). Tennessee case law uniformly confirms that this plain and simple language means what it says, and that TPRPA applies only to advertising or endorsements. *See Apple Corps Ltd. v. A.D.P.R., Inc.*, 843 F. Supp. 342, 347 (M.D. Tenn. 1993) ("Tennessee legislature . . . has narrowed the common law prohibition, proscribing only the unauthorized use of another's name or likeness in advertising"); *Gauck,* 805 F. Supp. 2d at 500 n.5; *Clark v. Viacom Int'l, Inc.*, 3:12-0675, 2014 WL 1934028, at *15 (M.D. Tenn. May 13, 2014); *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *12 (W.D. Tenn. May 9, 2011); *Read v. Lifeweaver, LLC*, No. 2:08-CV-116, 2010 WL 1798704, at *11 (E.D. Tenn. May 5, 2010).

The simplicity of the analysis should not be surprising because TPRPA's explicit statutory provisions reflect a uniform understanding that publicity rights are not implicated or violated either by sports broadcasts or re-broadcasts, which has been widely recognized by case law in other jurisdictions. *See, e.g., Dryer v. Nat'l Football League,* No. 09-2182, 2014 WL 5106738, at *10 (D. Minn. Oct. 10, 2014); *NFL v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. Major League Baseball*, 114 Cal. Rptr. 2d 307 (Cal. App. 1st Dist. 2001); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993); *see also Gautier v. Pro-Football, Inc.*, 304 N.Y. 354 (1952) (same analysis for broadcast of halftime performance);

10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986) (holding publicity rights preempted by Copyright Act, and not reaching state law issue). In fact, no state statute recognizes a right of publicity in a broadcast, and many (like Tennessee's) expressly clarify that no such right exists. *See, e.g.*, Cal. Civ. Code § 3344(d) ("a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account . . . shall not constitute a use for which consent is required"); 765 Ill. Comp. Stat. 1075/35(b)(2) (West 2002) (stating that act does not apply to "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account").

The Conference Defendants know of only one instance when a court has even suggested that participants might have publicity rights in broadcasts. In *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), a plaintiff class asserted antitrust claims based on the theory that NCAA rules improperly prohibited them from being paid for use of their publicity rights in videogames, television broadcasts, and other uses. In analyzing whether plaintiffs there had rights of publicity, the *O'Bannon* court concluded that a right of publicity in certain types of "stock footage" might be viable in at least one state, if the footage was used for "commercial" (*i.e.*, endorsement) purposes and/or if the rights were packaged as a "group license" but not as individual licenses. *See In re NCAA Student-Athlete Name and Likeness Litig.*, 2014 WL 1410451, at *9-11, n.6 & n.10 (N.D. Cal. Apr. 11, 2014); 990 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2013).[9] In reaching this conclusion, the court relied heavily on *Dryer v. NFL*, 689 F. Supp.

---

[9] *O'Bannon* was for a time consolidated with other actions and captioned "*In re NCAA Student-Athlete Name and Likeness Litigation.*" The actions were later deconsolidated. Thus, the same case is reported under two different captions, depending on the date of the decision being referenced. The Conference Defendants take exception to the final decision in *O'Bannon*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), and the NCAA has appealed, noting (among other things) that

11

2d 1113, 1123 (D. Minn. 2010), where retired NFL players challenged the use of game footage in documentaries.  *See In re NCAA*, 2014 WL 1410451, at *10-11; 990 F. Supp. 2d at 1005-06 (identifying no decision other than *Dryer* addressing sports broadcasts).  Shortly after the final decision in *O'Bannon*, the court in *Dryer* clarified its prior ruling and held definitively that neither Minnesota law, nor any of the other half-dozen state laws it considered, would recognize that athletes have a right of publicity in game footage.  *See Dryer v. NFL*, No. 09-2182 (PAM/FLN), 2014 WL 5106738, at *4-8 (D. Minn. Oct. 10, 2014).  The *O'Bannon* analysis of publicity rights is dicta because the court eventually determined that individual publicity rights have no value in sports broadcasts for other reasons.  *See O'Bannon*, 7 F. Supp. 3d at 969. Moreover, the plaintiffs in *O'Bannon* conceded that Tennessee recognizes no rights of publicity in sports broadcasts, and the court acknowledged that the plaintiffs would have no rights in states such as Tennessee.  *See In re NCAA*, 990 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2013); Antitrust Pl. Response at 20 (N.D. Ca. Civil Action 4:09-cv-1967; Pacer Dkt. No. 971-1) (Jan. 23, 2014). Thus, *O'Bannon* provides no support for plaintiffs here.

The uniform conclusion by courts and legislatures that publicity rights releases are not required for sports broadcasts recognizes, among other things, the practical reasons why a right of publicity cannot vest in each participant in a sporting event.  The creation of a requirement that every "participant" in a sporting event be convinced to transfer his or her publicity rights would impose a substantial and unwarranted burden on staging sporting events.  Potential participants would include not only players, but substitutes who never enter the game, coaches, cheerleaders, referees, medical personnel, and even spectators.  Taking the analysis a step further, judicially elevating the (non-existent) rights that plaintiffs assert here into a cause of

---

the District Court there improperly disregarded the U.S. Supreme Court's decision in *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984).

12

action might afford each such participant the right to veto a broadcast of a game. This veto right would have significant negative implications for broadcasts of sporting events, assuming that the broadcasts could be made at all.[10]

To summarize, under the express provisions of TPRPA, the plaintiffs have no claim based on broadcasts of games. Tennessee common law affords no rights broader than those set forth in TPRPA. Thus, plaintiffs' claims based on game broadcasts should be dismissed.

2. *Advertisements*. Plaintiffs have pleaded no facts, as required by *Twombly* and *Iqbal*, that could possibly support a claim for misappropriation of their rights of publicity in advertising. Plaintiffs fail to identify even a single instance in which any plaintiff's name, image, or likeness has been used in an advertisement. They do not specify which defendant(s) allegedly created and placed any advertisements, or whether any advertisement included copyrighted game footage on television, a newspaper advertisement, or a radio spot. Simply put, they allege no plausible facts at all. *Twombly* and *Iqbal* thus require dismissal of all of their publicity rights claims based on advertising. *See Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. 2010).

Even if plaintiffs had identified any advertisements using their names, images or likenesses, their claims would still properly be dismissed with prejudice.[11] TPRPA provides that no rights of publicity are violated if the use at issue "is *in connection with* any news, public affairs, or sports broadcast or account." Tenn. Code Ann. § 47-25-1107(a) (emphasis added). Although there are no reported Tennessee cases concerning advertisements of sports broadcasts, the language of the statute could not be broader or clearer. If the statute only exempted from its

---

[10] Moreover, as the Broadcast Defendants explain in their brief, affording each participant such a veto right would violate the First Amendment.

[11] An amendment would be futile because TPRPA is dispositive.

13

scope uses of NIL rights in a sports broadcast, there might be room for disagreement about the statutory language—but it exempts all uses "in connection with" such a broadcast. This language comfortably covers advertisements for the broadcast. Thus, the statute on its face excludes publicity claims based on advertisements for broadcasts. *See Consumer Prod. Safety Comm'n et al. v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) (starting point for statutory construction is the language of the statute itself).

The structure of TPRPA as a whole also confirms that the exclusionary language in § 47-25-1107(a) extends to advertisements of broadcasts. As noted above, TPRPA only applies to endorsements and advertisements—not to broadcasts. *See Apple Corps*, *supra*; *Clark, supra*. Given the limited scope of TPRPA, if § 47-25-1107(a) only excluded broadcasts, the phrase "in connection with" would be unnecessary surplusage. Put another way, for the exclusion of uses "in connection with [a] sports broadcast" to have any purpose in the statute, it must refer to the only uses covered by the statute, which are endorsements and advertisements. *See, e.g.*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) (statutes should be construed "so as to avoid rendering [any language] superfluous").

TPRPA's exclusion leaves plaintiffs without either a statutory or common law claim because, as the preceding section of this brief explains, the common law affords no rights in addition to those established by TPRPA. This result, again, is not surprising because it reflects a generally accepted principle of law.

Numerous courts have held that, if a publicity rights release is not required for a broadcast, it is also not required for the use of a person's name, image or likeness to advertise the broadcast. As the court explained in *Alfano v. NGHT, Inc.*, "a media publication with newsworthy content may use an individual's image in an advertisement that reproduces that

14

content—for instance, the reproduction of a magazine cover depicting a famous actress in an advertisement for subscriptions to the magazine." 623 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (approving use of person's photograph to promote broadcast); *see also Somerson v. World Wrestling Entm't, Inc.*, 956 F. Supp. 2d 1360, 1369-70 (N.D. Ga. 2013) (wrestler's image could be used without his permission to promote broadcasts of professional wrestling); *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 730 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001) (neither television docudrama of plaintiffs' lives nor promotional advertising for docudrama violated publicity rights).[12]  The exclusion in § 47-25-1107(a) appears in other states' statutes, as well.  *See* Nev. Rev. Stat. § 597.790; Okla. Stat. tit. 12, § 1448(N)(4); Tex. Prop. Code Ann. § 26.012(a)(5).

3. *Conclusion.*  Plaintiffs' Complaint reflects a fundamental misunderstanding of Tennessee law, for the reasons explained above.  Plaintiffs have no rights of publicity in broadcasts or advertisements for broadcasts, so their first two causes of action fail and should be dismissed.[13]

---

[12] Other cases applying the same principle and rejecting publicity rights claims include *Sidis v. F-R Pub. Corp.*, 113 F.2d 806, 810 (2d Cir. 1940), *cert. denied,* 311 U.S. 711 (1940) ("But since it was to advertise the article on [plaintiff], and the article itself was unobjectionable [under the N.Y. Civil Rights Law], the advertisement shares the privilege enjoyed by the article."); *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693 (Ill. App. 1 Dist. 2002) (television commercial to promote news station's investigative story not actionable); *Lawrence v. A.S. Abell & Co.*, 475 A.2d 448, 453 (Md. 1984) ("[I]t is acceptable to use extractions of past issues of a publication for advertising purposes"); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise. Since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's right of publicity, the use of his identity in advertisements for the film is similarly not actionable."); *Namath v. Sports Illustrated*, 48 A.D.2d 487, 371 N.Y.S.2d 10 (1975), *aff'd*, 39 N.Y.2d 897 (1976).

[13] As the Broadcast Defendants explain, plaintiffs' publicity claims should also be dismissed because they are barred by the Copyright Act and cannot survive analysis under the First

15

B.    Sherman Act Claim.

Plaintiffs' Sherman Act claim suffers from a myriad of fatal defects, each of which independently requires dismissal.   Again, however, this Court need not analyze each defect because plaintiffs' lack of any actionable right of publicity in broadcasts and advertisements for broadcasts makes it impossible for them to assert an antitrust claim.

1.  *No Antitrust Injury In The Absence Of Publicity Rights*.   In the absence of actionable publicity rights, plaintiffs cannot plead antitrust injury, as required by Section 4 of the Clayton Act, 15 U.S.C. § 15.  To plead and prove an antitrust claim, Section 4 requires a plaintiff to show he was "injured in his business or property by reason of anything forbidden in the antitrust laws." Courts refer to this as a requirement that a plaintiff plead and prove "antitrust injury."  *See CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) (affirming dismissal of plaintiff's complaint for failure to allege antitrust injury).  To meet this requirement, a plaintiff must show both injury in fact and "injury of the type the antitrust laws were designed to prevent."  *See id.*; *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007).  Here, because plaintiffs have no publicity rights, they cannot plead "injury to their business or property" or "injury of the type the antitrust laws were designed to prevent," as required by *Brunswick*.  Thus, in the parlance of antitrust jurisprudence, they lack standing to assert a Sherman Act claim, and their antitrust claims must be dismissed. *See NicSand*, 507 F.3d at 449 (affirming 12(b)(6) dismissal for failure to allege antitrust injury because court "must . . . reject claims under Rule 12(b)(6) when antitrust standing is missing").

To elaborate, the injuries plaintiffs assert relate exclusively to their alleged exclusion from a broadcasting marketplace within which they contend they would otherwise profit from

Amendment.  The Conference Defendants adopt the arguments of the Broadcast Defendants in these respects.

16

the licensing of their purported rights of publicity.  Compl. ¶¶ 124-131, 173-174.  Because plaintiffs do not have rights of publicity or other legally cognizable interests that would give them the right to be paid for appearing in television broadcasts of games, or in advertisements for such broadcasts, they cannot plead any antitrust injury.  They cannot have been injured by a purported conspiracy to deny them the ability to sell non-existent rights.  The decision in *Rooney v. Columbia Pictures Industries, Inc.*, 538 F. Supp. 211, 230 (S.D.N.Y. 1982), *aff'd*, 714 F.2d 117 (2d Cir. 1982), illustrates the point.  Rejecting an antitrust claim based on purported publicity rights in old films, the court explained:

> As to the first cause of action alleging a conspiracy since at least 1977 to refuse to deal with Rooney concerning his 'publicity rights' in pre-1960 films, it is manifest that, as Rooney had no such rights in the pre-1960 films, he cannot have suffered any antitrust injury as the result of any such conspiracy.

538 F. Supp. at 230.  As the *Rooney* decision illustrates, plaintiffs cannot have suffered injury to their "business or property" by the denial of the opportunity to license something they do not own.  *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 416 (1986) (antitrust "[i]njury implies violation of a legal right"); *see also Berning v. Gooding*, 820 F.2d 1550, 1552 (9th Cir. 1987) (same).

Plaintiffs' inability to plead or prove antitrust injury requires dismissal of their Sherman Act claims.  *NicSand, Inc.*, 507 F.3d at 449.  And, because plaintiffs cannot allege antitrust injury given their non-existent publicity rights, their claims should be dismissed with prejudice.  Any amendment would be futile.

2.  *Antitrust Conspiracy*.  Plaintiffs have completely failed to allege an antitrust conspiracy.  There are no allegations of any agreement between and among the Conference Defendants, Broadcast Defendants, and Licensing Defendants that could violate antitrust law.  Under *Twombly* and *Iqbal*, in which the Supreme Court expressly instructed district courts not to

17

permit antitrust or other complex claims to survive a motion to dismiss absent plausible factual allegations giving rise to a cause of action, this deficiency also requires dismissal.

Moreover, to the extent plaintiffs' antitrust claim is grounded upon the application of internal NCAA and Conference rules prohibiting "pay-for-play" and limiting scholarship amounts, *e.g.*, Compl. ¶¶ 97-103, it fails under *NCAA v. Board of Regents of the University of Oklahoma*, 468 U.S. 85 (1984). Plaintiffs acknowledge that the NCAA's historic limitations on payments to student-athletes for their participation in intercollegiate athletics are rooted in the NCAA's core amateurism principles. Compl. ¶¶ 97-99. In *Board of Regents*, the Supreme Court made it clear that rules enforcing amateurism standards—including rules enforcing the foundational concept of amateurism that "athletes must not be paid," 486 U.S. at 102—are procompetitive and therefore valid under the Sherman Act as a matter of law. As the Court explained, the "identification" of college football "with an academic tradition differentiates [it] from and makes it more popular than professional sports to which it might otherwise be comparable." *Id.* at 101-02. Consequently, by enforcing standards of amateurism, the NCAA "widen[s] consumer choice—not only the choices available to sports fans but also those available to athletes—and hence can be viewed as procompetitive." *Id.* at 102. Under these circumstances, the Court emphasized, "[t]here can be no question but that . . . the preservation of the student-athlete in higher education . . . *is entirely consistent* with the goals of the Sherman Act." *Id.* at 120 (emphasis added).

Federal courts throughout the country have routinely applied *Board of Regents* to validate NCAA rules prohibiting "pay for play." *See, e.g.*, *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 374 (5th Cir. 2014) (eligibility rules "are presumptively procompetitive and are not generally deemed unlawful restraints on trade"); *Agnew v. NCAA*, 683 F.3d 328, 343 (7th Cir.

18

2012) ("[W]hen an NCAA bylaw is clearly meant to help maintain the 'revered tradition of amateurism in college sports' or the "preservation of the student-athlete in higher education," the bylaw will be presumed procompetitive, since we must give the NCAA 'ample latitude to play that role.'"); *Smith v. NCAA*, 139 F.3d 180, 187 (3d Cir. 1998) ("In general, the NCAA's eligibility rules allow for the survival of the product, amateur sports, and allow for an even playing field."), *vacated on other grounds*, 525 U.S. 459 (1999); *Law v. NCAA*, 134 F.3d 1010, 1018 (10th Cir. 1998) (acknowledging "rules . . . forbidding payments to athletes" as among the "horizontal restraints necessary for the product [of college basketball] to exist").  Indeed, applying these principles, this Court has granted a motion to dismiss and rejected a challenge to NCAA rules because those rules are reasonable restraints that meet legitimate procompetitive goals.  *See, e.g.*, *Gaines v. NCAA*, 746 F. Supp. 738, 747 (M.D. Tenn. 1990) ("[T]he proper inquiry is whether the Rules are unreasonably anticompetitive.  This Court has concluded that the [amateur eligibility] Rules are overwhelmingly procompetitive, are justified by legitimate business reasons, and consequently cannot be viewed as having any unreasonably exclusionary or anticompetitive effect.").

In the *Gaines* decision, this Court correctly anticipated the analysis of the Sixth Circuit in *Bassett v. NCAA*, 528 F.3d 426, 433 (6th Cir. 2008).  In upholding an NCAA enforcement action against a coach who violated amateurism rules, the *Bassett* court explained that those rules "prohibit[] improper inducements" to student-athletes, are "designed to promote and ensure competitiveness amongst NCAA member schools," and that transgressions "violate[] the spirit of amateur athletics by providing remuneration to athletes in exchange for their commitments to play" intercollegiate sports.  *Id.*  Thus, there is no room to doubt that the Sixth Circuit has embraced and will follow *Board of Regents* and its progeny.  Accordingly, *Board of Regents*

19

requires dismissal of any claim here that challenges the validity of the NCAA's rules barring student-athletes from receiving pay in connection with their participation in intercollegiate sports or limiting the amounts of the scholarships they may receive.

    3. *No Relevant Product Market*. Plaintiffs' antitrust claims should also be dismissed because they do not sufficiently allege a plausible relevant product market, which they are required to do "so the district court can assess 'what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market.'" *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (*quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962)). A market definition fails if it clearly excludes reasonably interchangeable product substitutes or if it fails to include factual allegations justifying its narrow contours. *NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 473 (6th Cir. 2005). At best, plaintiffs assert without factual basis a purported market for the broadcast of football and basketball games, Compl. ¶ 125, a market in which plaintiffs are not actual or prospective broadcast participants and in which, as demonstrated in Section II.A., *supra*, they have not suffered antitrust injury "for use and broadcast of their names, likenesses and/or images." Compl. ¶ 130. In addition, it is clear that plaintiffs do not allege any facts to support the existence of such a market, much less the required details to establish a viable antitrust claim within it. *See Total Benefits*, 552 F.3d at 437 (granting a motion to dismiss where the allegations were insufficient to allow the court to "determine the boundaries of the relevant product market"); *see also Spahr v. Leegin Creative Leather Prods.*, No. 2:07-CV-187, 2008 U.S. Dist. LEXIS 90079, at *26 (E.D. Tenn. Aug. 20, 2008). This affords a third independent basis for dismissing plaintiffs' antitrust claims.

C.   Other Common Law Claims.

Plaintiffs allege that Defendants have been unjustly enriched by licensing and using "Plaintiffs' and Class Members' images . . . without compensating Plaintiffs and Class Members for such use."  Compl. ¶ 188.  They also contend that defendants engaged in a civil conspiracy under Tennessee law by "depriving Plaintiffs and Class Members of their right to commercially benefit from their rights of publicity and their contractual property rights."  Compl. ¶ 167.  And they seek "a detailed accounting of any and all profits, revenues, and consideration that in any way relates to Defendants' unauthorized use of [their] names, images and likeness."  Compl. ¶¶ 193-94.

Each of these claims rests on the same false premise as plaintiffs' right of publicity claims, *i.e.*, that they have a right to be paid for use of their name, image and likeness in broadcasts and in advertisements for broadcasts.  Because plaintiffs have no such right, all three claims must be dismissed.[14]  *See, e.g.*, *Ruffin-Steinback*, 367 F.3d at 463 (dismissing unjust enrichment claim because right of publicity claim had been dismissed); *Moore*, 2012 WL 1884758, at *49 (dismissing both unjust enrichment and civil conspiracy claims); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994) (civil conspiracy is a derivative claim that requires an underlying tort or wrongful act); *Wells v. Chattanooga Bakery, Inc.*, 2014 WL 1259153, at *7 (Tenn. Ct. App. 2014) (dismissing civil conspiracy claim and accounting claim); *Brainard v. Vassar*, 561 F. Supp. 2d 922, 933 (M.D. Tenn. 2008) (same).

---

[14]  In addition, unjust enrichment is inapplicable to suits regarding appropriation of identity claims like this one.  *See Moore v. Weinstein Co.*, 2012 WL 1884758, at *49 (M.D. Tenn. May 23, 2012) ("[T]he plaintiffs have not identified any case in which a court applied a theory of unjust enrichment to a lawsuit primarily relating to the infringement and/or appropriation of a person's trademark rights and privacy rights."), *aff'd*, 545 F. App'x 405 (6th Cir. 2013).

21

## III. CONCLUSION

The Conference Defendants respectfully request that the Court dismiss the claims asserted against them in the Complaint, with prejudice, for the reasons summarized above.

This 10th day of December, 2014.


The Filing User hereby represents that all signatories hereto agree to the filing of this document.

Respectfully submitted,

**NEAL & HARWELL, PLC**

/s/ James F. Sanders
Aubrey B. Harwell, Jr., No. 002559
James F. Sanders, No. 005267
J. Isaac Sanders, No. 29372
One Nashville Place, Suite 2000
150 Fourth Avenue North
Nashville, TN 37219
Telephone: (615) 244-1713
Fax: (615) 726-0573
aharwell@nealharwell.com
jsanders@nealharwell.com
isanders@nealharwell.com

-and-

**ROBINSON BRADSHAW & HINSON, P.A.**
Robert W. Fuller (N.C. State No. 10887)
Mark W. Merritt (N.C. State No. 12198)
101 North Tryon Street
Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2546
Fax: (704) 378-4000
rfuller@rbh.com
mmerritt@rbh.com

*Attorneys for Defendant Southeastern Conference*

22

**DODSON PARKER BEHM & CAPPARELLA PC**

/s/ Margaret L. Behm (with permission, James F. Sanders)
Margaret L. Behm
behm@dodsonparker.com
Tyler Chance Yarbro
tyarbro@dodsonparker.com
1310 Sixth Avenue North
Nashville, TN 37208
Tel: (615) 254-2291
Fax: (615) 726-2241

*Attorneys for Defendant Ohio Valley Conference*


**SMITH MOORE LEATHERWOOD, LLP**

/s/ Erik Albright (with permission, James F. Sanders)
Erik Albright
erik.albright@smithmoorelaw.com
Gregory G. Holland
greg.holland@smithmoorelaw.com
300 North Green Street
Suite 1400
Greensboro, NC 27401
Tel: (336-378-5368)
Fax: (336) 253-8956

Jonathan P. Heyl
jon.heyl@smithmoorelaw.com
101 North Tryon Street
Suite 1300
Charlotte, NC 23246
Tel: (704) 384-2600
Fax: (704) 384-2800

- and –

**HARWELL, HOWARD, HYNE, GABBERT & MANNER, P.C.**
David Alexander Fardon
daf@h3gm.com

23

333 Commerce Street
Suite 1500
Nashville, TN 37201
Tel:  (615) 256-0500

*Attorneys for Defendant Atlantic Coast Conference*

**MAYER BROWN LLP**

/s/  Richard Favretto (with permission, James F. Sanders)
Richard J. Favretto
rfavretto@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Tel:  (202) 263-3000
Fax:  (202) 263-3300

Andrew S. Rosenman
arosenman@mayerbrown.com
Britt Marie Miller
bmiller@mayerbrown.com
71 S Wacker Drive
Chicago, IL 60606
Tel:  (312) 782-0600
Fax:  (312) 701-7711

- and -

**BOWEN HAYES & KREISBERG, PLC**
Jay Scott Bowen
jay@bowenhayes.com
William V. Parsons, III
will@bowenhayes.com
47 Music Square East
Nashville, TN 37203
Tel:  (615) 329-4440
Fax:  (615) 329-4485

*Attorneys for Defendant The Big Ten Conference, Inc.*

24

**POLSINELLI P.C.**

/s/ Leane K. Capps (with permission, James F. Sanders)
Leane K. Capps
lcapps@polsinelli.com
2501 N Harwood
Suite 1900
Dallas, TX 75201
Tel: (214) 397-0030
Fax: (214) 397-0033

Amy D. Fitts
afitts@polsinelli.com
Brett C. Randol
brandol@ polsinelli.com
900 W 48th Place
Suite 900
Kansas City, MO 64112
C. Tel: (816) 753-1000
Fax: (816) 753-1536

- and –

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN PLLC**
Reid Daniel Leitner
reid.leitner@leitnerfirm.com
J. Gregory Grisham
greg.grisham@leitnerfirm.com
414 Union Street
Suite 1900
Nashville, TN 37219
Tel: (615) 255-7722
Fax: (615) 780-2210

*Attorneys for Defendants Big 12 Conference and Conference USA*

25

**PROSKAUER ROSE LLP**

/s/ Scott P. Cooper (with permission, James F. Sanders)
Scott P. Cooper
scooper@proskauer.com
Jennifer L. Jones
jljones@proskauer.com
Sarah Kroll-Rosenbaum
skroll-rosenbaum@proskauer.com
2049 Century Park East
Suite 3200
Los Angeles, CA 90067
Tel: (310) 557-2900
Fax: (310) 557-2193

- and -

**RILEY WARNOCK & JACOBSON PLC**
John R. Jacobson
jjacobson@rwjplc.com
James N. Bowen
jimbowen@rwjplc.com
1906 West End Avenue
Nashville, TN 37203
Tel: (615) 320-3700

*Attorneys for Defendants Pac-12 Conference and Big East Conference, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the Court's CM/ECF electronic filing system, on this the 10th day of December, 2014 on the following counsel of record:

| | |
|---|---|
| **Counsel for Plaintiffs Javon Marshall, Steven Clarke, Chris Conner, Patrick Miller, Byron Moore, Chaz Moore, Sean Parker, Eric Samuels, Marlon Walls, Rod Wilks** | |
| John P. Branham<br>Stephen J. Zralek<br>BONE, MCALLESTER & NORTON, PLLC<br>511 Union Street<br>Suite 1600<br>Nashville, TN 37219<br>jbranham@bonelaw.com<br>szralek@bonelaw.com<br><br>Patrick D. McMurtray<br>MCMURTRAY LAW FIRM, PLLC<br>P. O. Box 80<br>Christiana, TN 37037<br>patrick@mcmurtraylaw.com | Richard Manson<br>MANSON, JONES & WHITTED<br>1319 Fifth Avenue, N<br>Nashville, TN 37208<br>richardmanson@comcast.net<br><br>Ronald A. Stewart<br>STEWART, JOHNSON, CONNER & MANSON, LLP<br>215 2nd Avenue North<br>Suite 300<br>Nashville, TN 37201<br>rstewart@stewartjohnsonlaw.com |

| | |
|---|---|
| **Counsel for Defendant ABC, Inc.** | **Counsel for Defendant Atlantic Coast Conference** |
| Evan R. Chesler<br>Roger G. Brooks<br>Stefan H. Atkinson<br>J. Wesley Earnhardt<br>Daniel A. Richards<br>CRAVATH, SWAINE & MOORE, LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>echesler@cravath.com<br>rgbrooks@cravath.com<br>satkinson@cravath.com<br>wearnhardt@cravath.com<br>drichards@cravath.com<br><br>Nathan E. Siegel<br>LEVINE SULLIVAN KOCH & SCHULTZ, LLP | David Alexander Fardon<br>HARWELL, HOWARD, HYNE GABBERT & MANNER, P.C.<br>333 Commerce Street<br>Suite 1500<br>Nashville, TN 37201<br>daf@h3gm.com<br><br>Jonathan P. Heyl<br>SMITH MOORE LEATHERWOOD LLP<br>525 North Tryon Street<br>Suite 1400<br>Charlotte, NC 28202<br>Jon.heyl@smithmoorelaw.com |

27

| | |
|---|---|
| 1899 L Street, NW, Suite 200<br>Washington, DC 20036<br>nsiegel@lskslaw.com<br><br>Samuel David Lipshie<br>Joel D. Eckert<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division Street<br>Suite 700<br>Nashville, TN 37203-0025<br>slipshie@babc.com | D. Erik Albright<br>Gregory G. Holland<br>SMITH MOORE LEATHERWOOD LLP<br>300 N. Greene Street<br>Suite 1400<br>Greensboro, NC 27401<br>erik.albright@smithmoorelaw.com<br>greg.holland@smithmoorelaw.com |
| **Counsel for Defendant Big 12 Conference**<br><br>Reid D. Leitner<br>J. Gregory Grisham<br>LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC<br>414 Union Street, Suite 1900<br>Nashville, TN 37219-1782<br>Reid.leitner@leitnerfirm.com<br>Greg.grisham@leitnerfirm.com<br><br>Leane K. Capps<br>POLSINELLI, PC<br>Saint Ann Court<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX 75201<br>lcapps@polsinelli.com<br><br>Amy D. Fitts<br>Brett C. Randol<br>POLSINELLI, PC<br>900 W. 48th Place, Suite 900<br>Kansas City, MO 64112<br>afitts@polsinelli.com<br>brandol@polsinelli.com | **Counsel for Defendant Big East Conference, Inc.**<br><br>John R. Jacobson<br>James N. Bowen<br>RILEY WARNOCK & JACOBSON, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>jjacobson@rwjplc.com<br>jbowen@rwjplc.com<br><br>Scott P. Cooper<br>Jennifer L. Jones<br>Sarah Kroll-Rosenbaum<br>PROSKAUER ROSE LLP<br>2049 Century Park East, Suite 3200<br>Los Angeles, CA 90067<br>scooper@proskauer.com<br>jljones@proskauer.com<br>skroll-rosenbaum@proskauer.com |
| **Counsel for Defendant Big Ten Conference, Inc.**<br><br>Jay Scott Bowen<br>William V. Parsons, III | **Counsel for Defendant Big Ten Network, LLC**<br><br>Hal Hardin<br>HARDIN LAW OFFICE<br>211 Union Street |

| | |
|---|---|
| BOWEN HAYES & KREISBERG, PLC<br>47 Music Square East<br>Nashville, TN 37203<br>jay@bowenhayes.com<br>will@bowenhayes.com<br><br>Andrew S. Rosenman<br>Britt Marie Miller<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>arosenman@mayerbrown.com<br>bmiller@mayerbrown.com<br><br>Richard J. Favretto<br>MAYER BROWN LLP<br>1999 K Street, N.W.<br>Washington, DC 20006<br>rfavretto@mayerbrown.com | Suite 200<br>Nashville, TN 37201<br>hal@hardinlawoffice.com<br><br>Kevin T. Baine<br>Thomas G. Hentoff<br>Carl R. Metz<br>John E. Schmidtlein<br>WILLIAMS & CONNOLLY<br>725 Twelfth Street, NW<br>Washington, DC 20005<br>kbaine@wc.com<br>thentoff@wc.com<br>cmetz@wc.com<br>jschmidtlein@wc.com |
| **Counsel for Defendant CBS Broadcasting, Inc.**<br><br>Robert Dale Grimes<br>BASS, BERRY & SIMS<br>150 Third Avenue South<br>Suite 2800<br>Nashville, TN 37201<br>dgrimes@bassberry.com<br><br>James W. Quinn<br>Eric S. Hochstadt<br>Yehudah L. Buchweitz<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>james.quinn@weil.com<br>eric.hochstadt@weil.com | **Counsel for Defendant CBS Collegiate Sports Properties, Inc.**<br><br>John S. Hicks<br>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC<br>211 Commerce Street<br>Suite 800<br>Nashville, TN 37201<br>jhicks@bakerdonelson.com<br><br>Brian E. Robison<br>Robert C. Walters<br>Bradley G. Hubbard<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue<br>Suite 1100<br>Dallas, TX 75201<br>brobison@gibsondunn.com<br>rwalters@gibsondunn.com<br>bhubbard@gibsondunn.com |
| **Counsel for Defendant Conference USA**<br><br>Reid D. Leitner<br>J. Gregory Grisham | **Counsel for Defendant ESPN Inc.,<br>ESPN Inc. d/b/a SEC Network and ESPN Inc.<br>d/b/a Longhorn Network** |

29

| | |
|---|---|
| LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC<br>414 Union Street, Suite 1900<br>Nashville, TN 37219-1782<br>Reid.leitner@leitnerfirm.com<br>Greg.grisham@leitnerfirm.com<br><br>Leane K. Capps<br>Brett C. Randol<br>POLSINELLI, PC<br>Saint Ann Court<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX 75201<br>lcapps@polsinelli.com<br>brandol@ polsinelli.com<br><br>Amy D. Fitts<br>POLSINELLI, PC<br>900 W. 48th Place, Suite 900<br>Kansas City, MO 64112<br>afitts@polsinelli.com | Evan R. Chesler<br>Roger G. Brooks<br>Stefan H. Atkinson<br>J. Wesley Earnhardt<br>Daniel A. Richards<br>CRAVATH, SWAINE & MOORE, LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>echesler@cravath.com<br>rgbrooks@cravath.com<br>satkinson@cravath.com<br>wearnhardt@cravath.com<br>drichards@cravath.com<br><br>Nathan E. Siegel<br>LEVINE SULLIVAN KOCH & SCHULTZ, LLP<br>1899 L Street, NW, Suite 200<br>Washington, DC 20036<br>nsiegel@lskslaw.com<br><br>Samuel David Lipshie<br>Joel D. Eckert<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division Street<br>Suite 700<br>Nashville, TN 37203-0025<br>slipshie@babc.com |
| **Counsel for Defendant FOX Broadcasting Company**<br><br>Hal Hardin<br>HARDIN LAW OFFICE<br>211 Union Street<br>Suite 200<br>Nashville, TN 37201<br>hal@hardinlawoffice.com<br><br>Kevin T. Baine<br>Thomas G. Hentoff<br>Carl R. Metz<br>John E. Schmidtlein<br>WILLIAMS & CONNOLLY<br>725 Twelfth Street, NW<br>Washington, DC 20005<br>kbaine@wc.com | **Counsel for Defendant IMG College, LLC**<br><br>W. Scott Sims<br>SIMS\|FUNK, PLC<br>3310 West End Avenue, #410<br>Nashville, TN 37203<br>ssims@simsfunk.com<br><br>Kenneth L. Doroshow<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br>kdoroshow@jenner.com<br><br>Richard Stone<br>David Singer<br>Andrew J. Thomas |

| | |
|---|---|
| thentoff@wc.com<br>cmetz@wc.com<br>jschmidtlein@wc.com | JENNER & BLOCK<br>633 West 5th Street<br>Los Angeles, CA 90071-2054<br>rstone@jenner.com<br>dsinger@jenner.com<br>ajthomas@jenner.com |
| **Counsel for Defendant IMG Worldwide, Inc.**<br><br>W. Scott Sims<br>SIMS\|FUNK, PLC<br>3310 West End Avenue, #410<br>Nashville, TN 37203<br>ssims@simsfunk.com<br><br>Kenneth L. Doroshow<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br>kdoroshow@jenner.com<br><br>Richard Stone<br>David Singer<br>Andrew J. Thomas<br>JENNER & BLOCK<br>633 West 5th Street<br>Los Angeles, CA 90071-2054<br>rstone@jenner.com<br>dsinger@jenner.com<br>ajthomas@jenner.com | **Counsel for Defendant JMI Sports LLC**<br><br>Louis P. Petrich<br>Daniel M. Mayeda<br>LEOPOLD, PETRICH & SMITH PC<br>Suite 3110<br>2049 Century Park East<br>Los Angeles, CA 90067-3274<br>lpetrich@lpsla.com<br>dmayeda@lpsla.com<br><br>Amy J. Everhart<br>Maria J. Spear<br>EVERHART LAW FIRM PLC<br>1400 Fifth Avenue North<br>Nashville, TN 37208<br>amy@everhartlawfirm.com<br>maria@everhartlawfirm.com |
| **Counsel for Defendant Learfield Sports LLC**<br><br>Gail Vaughn Ashworth<br>WISEMAN ASHWORTH LAW GROUP PLC<br>511 Union Street<br>Suite 800<br>Nashville, TN 37219-1743<br>gail@wisemanashworth.com<br><br>Brett Johnson | **Counsel for Defendant National Broadcasting Company, Inc.**<br><br>R. Dale Grimes<br>Jeffrey P. Yarbro<br>BASS, BERRY & SIMS, PLC<br>150 Third Avenue South<br>Suite 2800<br>Nashville, TN 37201<br>dgrimes@bassberry.com<br>jyarbro@bassberry.com |

31

| | |
|---|---|
| Thomas M. Melsheimer<br>Grant Schmidt<br>Thomas B. Walsh IV<br>FISH & RICHARDSON, PC<br>1717 Main Street<br>Suite 5000<br>Dallas, TX 75201<br>johnson@fr.com<br>melsheimer@fr.com<br>schmidt@fr.com<br>Walsh@fr.com | Kelli L. Sager<br>DAVIS WRIGHT TREMAINE LLP<br>865 South Figueroa Street<br>Suite 2400<br>Los Angeles, CA 90017<br>kellisager@dwt.com<br><br>Arthur J. Burke<br>Dana M. Seshens<br>James W. Haldin<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Arthur.burke@davispolk.com<br>Dana.seshens@davispolk.com<br>James.haldin@davispolk.com |
| **Counsel for Defendant Ohio Valley Conference**<br><br>Margaret L. Behm<br>Tyler Chance Yarbro<br>DODSON, PARKER, BEHM & CAPPARELLA, P.C.<br>1310 6th Avenue North<br>Nashville, TN 37208<br>behm@dodsonparker.com<br>tyarbro@dodsonparker.com | **Counsel for Defendant PAC-12 Conference**<br><br>John R. Jacobson<br>James N. Bowen<br>RILEY WARNOCK & JACOBSON, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>jjacobson@rwjplc.com<br>jbowen@rwjplc.com<br><br>Scott P. Cooper<br>Jennifer L. Jones<br>Sarah Kroll-Rosenbaum<br>PROSKAUER ROSE LLP<br>2049 Century Park East, Suite 3200<br>Los Angeles, CA 90067<br>scooper@proskauer.com<br>jljones@proskauer.com<br>skroll-rosenbaum@proskauer.com |
| **Counsel for Defendant T3Media**<br><br>Robb S. Harvey<br>Todd Hambidge<br>WALLER LANSDEN DORTCH & DAVIS LLP<br>511 Union Avenue, Suite 2700<br>Nashville, TN 37215 | **Counsel for Defendant TeleSouth Communications, Inc.**<br><br>John S. Hicks<br>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ P.C.<br>211 Commerce Street, Suite 800 |

| | |
|---|---|
| robb.harvey@wallerlaw.com<br>todd.hambidge@wallerlaw.com | Nashville, TN 37201<br>jhicks@bakerdonelson.com<br><br>W. Scott Welch<br>Walker W. Jones III<br>Samuel D. Gregory<br>BAKER, DONELSON, BEARMAN, CALDWELL &<br>BERKOWITZ P.C.<br>Meadowbrook Office Park<br>4268 I-55 North<br>Jackson, MS 39211<br>swelch@bakerdonelson.com<br>wjones@bakerdonelson.com<br>sdgregory@bakerdonelson.com |
| **Counsel for Defendant William Morris Endeavor Entertainment, LLC**<br><br>W. Scott Sims<br>SIMS\|FUNK, PLC<br>3310 West End Avenue, #410<br>Nashville, TN 37203<br>ssims@simsfunk.com<br><br>Kenneth L. Doroshow<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br>kdoroshow@jenner.com<br><br>Richard Stone<br>David Singer<br>Andrew J. Thomas<br>JENNER & BLOCK<br>633 West 5th Street<br>Los Angeles, CA 90071-2054<br>rstone@jenner.com<br>dsinger@jenner.com<br>ajthomas@jenner.com | |

/s/ James F. Sanders