# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAVON MARSHALL, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ESPN, INC., et al.,<br><br>        Defendants. | Civil Action No. 3:14-cv-01945<br><br>Chief District Judge Kevin H. Sharp |

## MEMORANDUM OF LAW IN SUPPORT OF LICENSING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

ARGUMENT .................................................................................................................................. 2

    I.       Standard of Review ............................................................................................................ 2

    II.      Plaintiffs' Antitrust Claim is Foreclosed by the U.S. Supreme Court's Decision in
*NCAA v. Board of Regents*. ............................................................................................... 3

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012) ................................................................. 5, 8

*Banks v. NCAA*, 977 F.2d 1081 (7th Cir. 1992) ..................................................................... 5

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008) ..................................................................... 7

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ........................................... 2

*Gaines v. NCAA*, 746 F. Supp. 738 (M.D. Tenn. 1990) ......................................................... 6

*McCormack v. NCAA*, 845 F.2d 1338 (5th Cir. 1988) ........................................................... 5

*NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) ................ 4, 5, 6

*Smith v. NCAA*, 139 F.3d 180 (3d Cir. 1998), *vacated on other ground*, 525 U.S. 459 (1999) ................................................................................................................................. 8

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2008) ....................................................................... 8

*Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Commission Antitrust Litigation)*, 583 F.3d 896 (6th Cir. 2009) .............................................................................. 2

*TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992) ..................................................................................................................... 8

*United States v. Walters*, 711 F. Supp. 1435 (N.D. Ill. 1989) ............................................... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 10(c) ................................................................................................................ 1

**INTRODUCTION**

In this putative class action, Plaintiffs are ten former college football and basketball players who complain that they have not been paid for the use of their names, images and likenesses in connection with televised broadcasts of college sports events in which they allegedly have appeared. Their claims stem from the National Collegiate Athletic Association's ("NCAA") amateurism rules, which restrict payments to college athletes for their athletic performances. *See* Compl. ¶ 5 (ECF No. 1). Plaintiffs have named dozens of entities as defendants and attempt to assert multiple causes of action against them, including an antitrust claim under Section 1 of the Sherman Act and right of publicity claims under the Tennessee Personal Rights Protection Act. *Id.* ¶¶ 1-3.

Plaintiffs categorize defendants into three groups: (1) Broadcasting Defendants (who more accurately refer to themselves as "Network Defendants"), (2) Conference Defendants, and (3) Licensing Defendants.[1] *See* Compl. ¶¶ 1-3. The Licensing Defendants join in the arguments in the motions to dismiss already submitted by the Network Defendants and Conference Defendants and submit that the Complaint should be dismissed against the Licensing Defendants for the same reasons advanced by the Network Defendants and the Conference Defendants. *See* Fed. R. Civ. P. 10(c). The Licensing Defendants write separately, however, to supplement one particular argument in support of dismissal of Plaintiffs' antitrust claim. Specifically, and as discussed in greater detail below, Plaintiffs' complaint should be dismissed because the United

---

[1] The Licensing Defendants are Outfront Media Sports, Inc. (f/k/a CBS Collegiate Sports Properties, Inc.); IMG Worldwide, LLC (erroneously identified in the Complaint as "IMG Worldwide, Inc."), IMG College, LLC, and William Morris Endeavor Entertainment, LLC (erroneously identified in the Complaint as "William Morris Endeavors, LLC"); JMI Sports, LLC; Learfield Sports LLC; T3 Media, Inc.; and TeleSouth Communications, Inc.

States Supreme Court has already conclusively resolved the antitrust issue in Plaintiffs' complaint, holding that the NCAA's amateurism rules do not violate the Sherman Act.

## ARGUMENT

### I. Standard of Review

A motion to dismiss under Federal Rule of Procedure 12(b)(6) must be granted when the complaint fails to state a legal claim, despite "constru[ing] the complaint in the light most favorable to the plaintiff[s], accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff[s]." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quotation marks omitted). "[I]t is not enough merely to plead a set of facts 'consistent with' a claim of relief; there must also be enough 'factual enhancement' to 'nudge [the] claim[] across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alterations in original). "As the *Twombly* Court acknowledged, 'the costs of modern federal antitrust litigation and the increasing caseload of federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.'" *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 904 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 558).[2]

---

[2] Plaintiffs' allegations against the Licensing Defendants fail to meet even the most minimal pleading requirements, as nowhere in the Complaint do Plaintiffs identify the Licensing Defendants' involvement in the supposedly anticompetitive conduct, or any injury that the Licensing Defendants have allegedly caused. Indeed, Plaintiffs do not so much as even hint at what the Licensing Defendants have done to merit inclusion in this lawsuit at all. As the Conference Defendants observe, "[e]ven to a reader informed (independently from the Complaint) about the business of the Licensing Defendants, it is not possible to determine from these allegations what the Licensing Defendants have allegedly done wrong." Memorandum in Support of Conference Defendants' Motion to Dismiss, dated Dec. 10, 2014, at 5 (ECF No. 215). Regardless, even if Plaintiffs had adequately alleged the Licensing Defendants' role in the supposed conspiracy that forms the basis of the Complaint, their claims fail as a matter of law for

**II.    Plaintiffs' Antitrust Claim is Foreclosed by the U.S. Supreme Court's Decision in *NCAA v. Board of Regents*.**

Stripped of its antitrust catch phrases, Plaintiffs' antitrust claim boils down to the assertion that amateur athletics and the rules promulgated and implemented to preserve them are inherently anticompetitive. Plaintiffs contend that the antitrust "conspiracy" alleged here begins with the rules promulgated by the NCAA and the Conference Defendants that "jointly enforce [a] clear demarcation between Student Athletes and professional athletes by permitting only 'amateur' Student Athletes to participate in intercollegiate sports" Compl. ¶ 98. Plaintiffs allege further that these amateurism rules "are inherently anticompetitive because they forbid Student Athletes from competing in the marketplace for the value of their services on and off the playing field." Compl. ¶ 100.

According to Plaintiffs, anyone who abides by the NCAA's amateurism rules and agrees not to pay student athletes for the value of their supposed rights of publicity in college sports broadcasts is effectively a co-conspirator with the NCAA in what is portrayed as a grand antitrust "conspiracy." *See* Compl., Introduction ("The defendants – broadcasters, athletic conferences, and licensing entities – have conspired with each other and the NCAA to promulgate, enforce, adopt, implement and/or exploit rules that are inherently anticompetitive in forbidding Student Athletes from competing in the market place for the value of their rights to publicity."). At its essence, then, Plaintiffs' complaint is an attack on the NCAA's amateurism rules, disguised as an antitrust complaint against third parties that have been unwilling to breach those rules by directly paying student athletes if they appear on television, which would disqualify them from participation in such amateur contests. *See* Compl. ¶ 98.

---

the reasons set forth herein and in the motions to dismiss filed by the Network Defendants and the Conference Defendants.

Unfortunately for Plaintiffs, the issue of whether the NCAA's amateurism rules violate the antitrust laws was conclusively settled by the U.S. Supreme Court thirty years ago.  In *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984), the Court recognized that the "NCAA plays a critical role in the maintenance of a revered tradition of amateurism in college" and found that "[t]here can be no question" that "the preservation of the student-athlete in higher education adds richness and diversity to intercollegiate athletics, and is *entirely consistent with the goals of the Sherman Act*."  468 U.S. at 120 (emphasis added).

At issue in *Board of Regents* was whether an NCAA limitation on how many football games schools could license for telecast violated the Sherman Act.  The Court found those restrictions to be problematic, but noted that they did not "fit into the same mold as do rules defining the conditions of the contest, *the eligibility of participants*, or the manner in which members of a joint enterprise shall share the responsibilities and the benefits of the total venture."  468 U.S. at 117 (emphasis added).  As to those rules that did "fit the mold," however – including, specifically, eligibility rules that prohibit student athletes from being paid – the Court found that such rules were "essential if the product is to be available at all" and thus did not violate the Sherman Act.  *Id.* at 101.

In particular, the Supreme Court recognized that preserving the pro-competitive, amateur quality of college sports requires some mutual agreement to "differentiate[] college football from and make[] it more popular than professional sports to which it might otherwise be comparable."  *Id.* at 101-02.  The Court found that, to "preserve the character and quality of the 'product,'" there must be rules such as "athletes must not be paid, must be required to attend class, and the like."  *Id.* at 102.  Because "the NCAA plays a vital role in enabling college football to preserve its character, and as a result enables a product to be marketed which might otherwise be

unavailable," the Court concluded, "the integrity of the 'product' cannot be preserved[,] except by mutual agreement . . . ." *Id.*

The Supreme Court made clear that the NCAA's amateurism/eligibility rules did not violate the Sherman Act, as they "widen consumer choice – and not only the choice available to sports fans, but also those available to athletes – and hence can be viewed as procompetitive." *Id.* The Court's findings have since been echoed by lower courts throughout the country. *See, e.g., Banks v. NCAA*, 977 F.2d 1081, 1092 (7th Cir. 1992) ("[S]ome colleges have been justifiably sanctioned by the NCAA for their violations of NCAA Rules regarding cash compensations . . . ."); *McCormack v. NCAA*, 845 F.2d 1338, 1343-45 (5th Cir. 1988) (citing *Board of Regents* and concluding that NCAA's compensation rules "do not violate the antitrust laws"); *United States v. Walters*, 711 F. Supp. 1435, 1441-42 (N.D. Ill. 1989) (rejecting argument of sports agents indicted for contracting with college athletes that "the eligibility rules which restrict compensation student-athletes receive constitute illegal price-fixing and enforcement of these rules constitutes an illegal group boycott in violation of the Sherman Act").

Given that the Supreme Court has found the very eligibility rules at the heart of Plaintiffs' antitrust claim in this case to be consistent with the Sherman Act as a matter of law, Plaintiffs' complaint should be dismissed at this threshold stage. As the Seventh Circuit has counseled, courts should "find certain NCAA bylaws that 'fit into the same mold' as those discussed in *Board of Regents* to be procompetitive . . . at the motion-to-dismiss stage. . . . Thus, the first – and possibly only – question to be answered when NCAA bylaws are challenged is whether [they] . . . are of the type that have been blessed by the Supreme Court, making them presumptively procompetitive." *Agnew v. NCAA*, 683 F.3d 328, 341 (7th Cir. 2012) (citation omitted). The eligibility rules at issue here are unquestionably of this type.

As the Supreme Court recognized in *Board of Regents*, the mere fact that the NCAA and others may profit from amateur athletics does not mean that restrictions on student eligibility are subject to the antitrust laws. Commercialism is not the same as professionalism, and a sport may be commercialized and still be amateur. *See Bd. of Regents*, 468 U.S. at 101-02. Thus, as this Court has recognized, eligibility rules that preserve the amateur nature of college athletics are non-commercial rules outside the reach of the antitrust laws, while rules expressly restricting the televising of college football games, which are commercial in nature, are not. *Gaines v. NCAA*, 746 F. Supp. 738, 743-44 (M.D. Tenn. 1990) (C.J. Wiseman).

In *Gaines*, the plaintiff sought to enjoin the enforcement of NCAA rules that deemed him ineligible to compete on the Vanderbilt football team because he had entered the professional draft and retained an agent, despite not having been drafted by any team or paying any compensation to the agent. 746 F. Supp. at 740-41. The *Gaines* court denied the plaintiff's motion for preliminary injunction and found that the eligibility rules at issue were not subject to antitrust scrutiny under *Board of Regents* because they were non-commercial in nature:

> The overriding purpose of the eligibility rules, thus, is not to provide the NCAA with commercial advantage, but rather the opposite extreme – to prevent commercializing influences from destroying the unique 'product' of NCAA college football. Even in the increasingly commercial modern world, this Court believes there is still validity to the Athenian concept of a complete education derived from fostering full growth of both mind and body. The overriding purpose behind the NCAA Rules at issue in this case is to preserve the unique atmosphere of competition between 'student-athletes.' This Court, therefore rejects the notion that such Rules may be judged or struck down by federal antitrust law.

*Id.* at 744. The court went on to conclude that, even if the eligibility rules were subject to antitrust scrutiny, they were procompetitive as a matter of law under *Board of Regents*. *Id.* at 747 ("The only conclusion which this Court can reach in light of the Supreme Court's language quoted above is that the Rules challenged by Gaines are not unreasonably anticompetitive.").
6

Eighteen years after *Gaines*, the Sixth Circuit, in *Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008), likewise held that NCAA rules against improper recruiting inducements were non-commercial and, therefore, that antitrust claims based on the enforcement of those rules were properly dismissed on a Rule 12 motion. 528 F.3d at 433. Importantly, the Sixth Circuit began its review with the admonition that "the appropriate inquiry is 'whether the rule itself is commercial, not whether the entity promulgating the rule is commercial.'" *Id.* (quoting *World Wide Basketball & Sport Tours v. NCAA*, 388 F.3d 955, 959 (6th Cir. 2004)). The court held that the rules against improper recruiting inducements were akin to the eligibility rules found to be non-commercial: "Similar to the eligibility rules in *Smith* [*v. NCAA*, 139 F.3d 180 (3d Cir. 1998)], NCAA's rules on recruiting athletes, specifically those rules prohibiting improper inducements . . . are all explicitly non-commercial. In fact, those rules are *anti-commercial* . . . ." 528 F.3d at 433 (emphasis in original). The Sixth Circuit held that, because a violation of the rules against recruiting inducements would "violate[] the spirit of amateur athletics by providing remuneration to athletes in exchange for their commitment to play for the violator's football program," *id.*, the rules were non-commercial in nature and outside the reach of the antitrust laws. The court also concluded that, because the rules themselves were not commercial, enforcing and abiding by those rules (as Plaintiffs here claim the Licensing Defendants do) also cannot be commercial activity, and thus upheld the dismissal of the complaint on this basis. *Id.*

The Seventh Circuit reached the same result in *Agnew,* which read *Board of Regents* to say that the NCAA rules, which were "clearly meant to help maintain the 'revered tradition of amateurism in college sports' or the 'preservation of the student-athlete in higher education,'" are so plainly lawful that they can be upheld "in the twinkling of an eye – that is, at the motion-

7

to-dismiss stage." *Agnew*, 683 F.3d at 341-42 (quoting *Board of Regents,* 468 U.S. at 110 n.93 and citing *American Needle, Inc. v. NFL,* 560 U.S. 183, 293 (2010)).

The Complaint in this case cannot insulate itself from the clear holdings in *Bassett*, *Gaines*, *Agnew*, and *Board of Regents* merely by reciting the conclusory allegation that parties that adhere to the NCAA rules, "permitting only 'amateur' Student-Athletes to participate in intercollegiate sports," Compl. ¶ 98, are "colluding" in an "antitrust conspiracy," "price fixing," or engaging in a concerted refusal to deal or "horizontal agreements." The use of antitrust "buzz words" cannot save a complaint that challenges rules of eligibility that have been held repeatedly – as a matter of both fact and law – to be outside the reach of the antitrust laws. *See TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) ("The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support TVCN's conclusory allegations."); *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2008) ("Bricktown, Inc.'s use of antitrust buzz-words and parroting of general antitrust theories is insufficient to support a Sherman Act violation.").

In sum, the Supreme Court, the Sixth Circuit, and the Middle District of Tennessee have all held that, contrary to Plaintiffs' core allegation, enforcing "[a] clear demarcation between Student Athletes and professional athletes," Compl ¶ 98, cannot violate the antitrust laws, as a matter of law. *See also Agnew,* 683 F.3d at 341-42; *Smith v. NCAA*, 139 F.3d 180, 186 (3d Cir. 1998), *vacated on other ground*, 525 U.S. 459 (1999). Accordingly, Plaintiffs' antitrust claim should be dismissed.

## CONCLUSION

The Licensing Defendants' motion should be granted and Plaintiffs' Complaint should be dismissed in its entirety for the reasons set forth in the motions to dismiss filed by the Network Defendants and the Conference Defendants, and for the additional reasons set forth herein.[3]

Dated: December 10, 2014

---

[3] In addition to the arguments set forth herein and in the Network and Conference Defendants' motions to dismiss, several of the Licensing Defendants have further grounds for dismissal of Plaintiffs' claims as they apply uniquely to them. For example, Plaintiffs' claims against Outfront Media Sports, Inc. and TeleSouth Communications, Inc. should be dismissed for lack of personal jurisdiction, and those defendants have filed separate motions to dismiss on that issue. Similarly, Plaintiffs' claims against IMG College, LLC, IMG Worldwide, LLC and William Morris Endeavor Entertainment, LLC (collectively, the "WME-IMG Defendants") are the subject of a release in litigation in the Northern District of California. However, because the grounds for dismissal that are common to all Defendants in this action should dispose of Plaintiffs' complaint in its entirety, the WME-IMG Defendants reserve their arguments on this additional issue and, for the sake of minimizing the Court's present burden, will either address those arguments separately or defer motion practice on the issue until such time as it may become necessary.

Respectfully submitted,

/s/W. Scott Sims
**SIMS FUNK, PLC**
W. Scott Sims
ssims@simsfunk.com
3310 West End Avenue
Suite 410
Nashville, TN 37203
Tel: (615) 292-9335
Fax: (615) 649-8565

 - and -

**JENNER & BLOCK LLP**
Richard L. Stone
rstone@jenner.com
David R. Singer
dsinger@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Tel: (213) 239-5100
Fax: (213) 239-5199

Kenneth L. Doroshow
kdoroshow@jenner.com
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: (202) 639-6027
Fax: (202) 661-4855

*Attorneys for Defendants IMG Worldwide, LLC; IMG College, LLC; and William Morris Endeavor Entertainment, LLC*

/s/ Louis P. Petrich, *with permission*
**LEOPOLD, PETRICH & SMITH, P.C.**
Louis P. Petrich
lpetrich@lpsla.com
Daniel M. Mayeda
dmayeda@lpsla.com
2049 Century Park East, Suite 3110
Los Angeles, CA 90067
Tel: 310-277-3333
Fax: 310-277-7444

- and -

**EVERHART LAW FIRM PLC**
Amy J. Everhart
amy@everhartlawfirm.com
Maria A. Spear
maria@everhartlawfirm.com
1400 Fifth Avenue North
Nashville, TN 37208
Tel: (615) 800-8919
Fax: (615) 800-8918

*Attorneys for Defendant JMI Sports LLC*

11

/s/ Walker W. Jones, III, *with permission*
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Walker W. Jones, III
wjones@bakerdonelson.com
W. Scott Welch
swelch@bakerdonelson.com
Samuel D. Gregory
sdgregory@bakerdonelson.com
P O Box 14167
Jackson, MS 39236-4167
Tel: (601) 351-2400
Fax: (601) 351-2424

John S. Hicks
jhicks@bakerdonelson.com
211 Commerce Street
Suite 800
Nashville, TN 37201
Tel: (615) 726-5600

*Attorneys for Defendant TeleSouth Communications, Inc.*


/s/ Robb S. Harvey, *with permission*
**WALLER, LANSDEN, DORTCH & DAVIS, LLP**
Robb S. Harvey
robb.harvey@wallerlaw.com
Todd R. Hambidge
todd.hambidge@wallerlaw.com
Nashville City Center
511 Union Street
Suite 2700
Nashville, TN 37219
Tel: (615) 244-6380
Fax: (615) 244-6804

*Attorneys for Defendant T3 Media, Inc.*

12

/s/ Thomas B. Walsh, IV, *with permission*
**FISH & RICHARDSON P.C.**
Thomas B. Walsh, IV
walsh@fr.com
Thomas M. Melsheimer
melsheimer@fr.com
M. Brett Johnson
johnson@fr.com
Grant Schmidt
gschmidt@fr.com
    *pro hac vice admissions pending*

1717 Main Street
Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

  - and -

**WISEMAN ASHWORTH LAW GROUP PLC**
Gail Vaughn Ashworth
gail@wisemanashworth.com
511 Union Street
Suite 800
Nashville, TN 37219-1743
Tel: (615) 254-1877
Fax: (615) 254-1878

*Attorneys for Defendant Learfield Sports LLC*

/s/ John S. Hicks, *with permission*
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

John S. Hicks
jhicks@bakerdonelson.com
211 Commerce Street
Suite 800
Nashville, TN 37201
Tel: (615) 726-5600

Walker W. Jones, III
wjones@bakerdonelson.com
W. Scott Welch
swelch@bakerdonelson.com
P O Box 14167
Jackson, MS 39236-4167
Tel: (601) 351-2400
Fax: (601) 351-2424

- and -

**GIBSON, DUNN & CRUTCHER**
Robert C. Walters
rwalters@gibsondunn.com
Brian E. Robison
brobison@gibsondunn.com
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
Tel: (214) 698-3100
Fax: (214) 571-2900

*Attorneys for Defendant Outfront Media Sports, Inc. (f/k/a CBS Collegiate Sports Properties, Inc.)*

14
Case 3:14-cv-01945   Document 219   Filed 12/10/14   Page 17 of 18 PageID #: 854

**CERTIFICATE OF SERVICE**

      I certify that on December 10, 2014, I caused the foregoing Memorandum of Law In Support of Licensing Defendants' Motion To Dismiss the Complaint to be electronically filed via the Court's CM/ECF System. Counsel for all parties will be served via the Court's CM/ECF system at the email addresses on file.

Date: December 10, 2014                                                /s/W. Scott Sims

15
Case 3:14-cv-01945  Document 219  Filed 12/10/14  Page 18 of 18 PageID #: 855