# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JAVON MARSHALL, et al.,

        Plaintiffs,

    v.

ESPN INC., et al.,

        Defendants.

Civil Action No. 3:14-cv-1945

Chief District Judge Kevin H. Sharp

CLASS ACTION
JURY DEMAND

---

## PLAINTIFFS' RESPONSE TO THE CONFERENCE DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

DEFINITIONS...........................................................**Error! Bookmark not defined.**

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ................................................................................................ 2

STANDARD – *PER SE* VIOLATION ............................................................................... 2

    I.   Plaintiffs Have Established Antitrust Injury. ...................................................... 3

       A.  Injury to Plaintiffs' and Proposed Class Members' Rights of Publicity under Tennessee law. ...........................................................................................................3

       B.  Injury to Plaintiffs' and Proposed Class Members' Rights of Publicity under Other State Laws.......................................................................................................3

       C.  Injury to Competition and Plaintiffs' Economic Interest in Their NIL. ...........................4

    II.   Plaintiffs Adequately Plead Antitrust Conspiracy. ........................................... 6

       A.  Conference Defendants Have Agreed to Exclude Student Athletes from NIL Market ........................................................................................................................6

       B.  Conference Defendants Misapply NCAA v. Board of Regents ......................................7

    III.  Plaintiffs Adequately Plead a Relevant Market. ............................................. 13

CONCLUSION................................................................................................................ 14

CERTIFICATE OF SERVICE ....................................................................................... 16

Case 3:14-cv-01945   Document 258   Filed 02/13/15   Page 2 of 24 PageID #: 1925

# TABLE OF AUTHORITIES

**Cases**

Agnew v. NCAA, 683 F.3d 328 (7th Cir. 2012)............................................................ 5, 7, 10, 11

Ashcroft v. Iqbal, 556 U.S. at 662 (U.S., 2009)...................................................................... 2

Bassett v. NCAA, 528 F.3d 426 (6th Cir. 2008).................................................................... 12

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977)............................................ 2

Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56 ( 1st Cir. 2005) ................................................. 8

Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.,
    505 F.3d 818 (8th Cir. 2007) ........................................................................................ 5

Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860 (6th Cir. 2012)......................................... 2

Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n, 493 U.S. 411 (1990) ................. 6

Gaines v. NCAA, 746 F. Supp. 738 (M.D. Tenn. 1990) ......................................................... 12

Hynix Semiconductors, Inc. v. Rambus, Inc., 2006 WL 1991760
    (N.D. Cal. July 14, 2006) ............................................................................................ 5

Jama v. Immigration and Customs Enforcement, 543 U.S. 335 (2005) ........................................ 8

Kirtsaeng v. John Wiley & Sons, Inc., 133 S. Ct. 1351 (2013) ................................................ 8, 9

Law v. NCAA, 134 F.3d 110 (10th Cir. 1998) .......................................................... 12, 17, 20, 21

Marucci Sports, LLC v. NCAA, 751 F.3d 368 (5th Cir. 2014) ................................................. 11

Northern Pac. Ry. Co. v. United States, 356 U.S. 1 (1958).......................................................... 3

O'Bannon v. NCAA, 7 F. Supp. 3d 955 (N.D. Cal. 2014) ........................................ 4, 5, 6, 7, 8, 9

Smith v. NCAA, 139 F.3d 368 (3d Cir. 1998)............................................................... 11, 18, 20

State Oil Co. v. Khan, 552 U.S. 3 (1997) ............................................................................... 3

Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,
    552 F.3d 430 (6th Cir. 2008) ..................................................................................... 2, 3

Twombly, 554 U.S. 545 (2008) .............................................................................................. 6

**COME NOW** Plaintiffs, by and through counsel, hereby respond to the Motion to Dismiss filed by Defendants The Atlantic Coast Conference, Big East Conference, Inc., Big 12 Conference, The Big Ten Conference, Inc., Conference USA, Ohio Valley Conference, Pac-12 Conference and Southeastern Conference (collectively, the "Conference Defendants"):

## INTRODUCTION

Conference Defendants' introduction, standards of review and allegations sections are not unique and Plaintiffs' Response to Broadcasters' Motion to Dismiss is adopted and incorporated herein by reference.

Conference Defendants are correct that Plaintiffs' Fifth Cause of Action (Lanham Act) does not apply to the actual conferences.  As to the SEC Network, the Lanham Act allegations are applicable and Plaintiffs adopt and incorporate Section III of their Response to Broadcasters' Motion to Dismiss as it pertains to the Lanham Action violations.

In their arguments sections, Conference Defendants adopt the arguments of the other Defendants and then repeat certain arguments as to the right of publicity.  To avoid repetition, Plaintiffs' Response to Broadcasters' Motion to Dismiss is adopted and incorporated herein by reference.  Although Conference Defendants appear to make factual arguments regarding advertising specifics (See Doc. 215 at PageID 794), Conference Defendants do not deny, nor can they, that they have used Student Athletes in advertisements.  Additionally, all Defendants have subsequently made it clear that these motions to dismiss are purely legal in nature and specifically state that "Defendants Do Not Raise Any Issues of Fact in Their Motions To Dismiss." See Doc. 252 at PageID 1795.

To the extent that any of the Conference Defendants' arguments are unique, Plaintiffs respond as follow:

## STANDARD OF REVIEW

At the pleading stage, Plaintiffs are not required to "allege facts showing that an unlawful agreement is more likely than parallel conduct." Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860 (6th Cir. 2012). Plaintiffs are merely required to plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Ashcroft v. Iqbal, 556 U.S. at 662, 678 (U.S., 2009). An antitrust action brought under Section 1 of the Sherman Act "will survive a Rule 12(b)(6) motion to dismiss if it alleges facts sufficient to raise a plausible inference of an unlawful agreement to restrain trade." Morton Salt, Inc., 702 F.3d at 869. A private plaintiff may recover damages for an antitrust violation by showing "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent` and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) (emphasis in original).

## STANDARD – *PER SE* VIOLATION

As the Complaint states, Conference Defendants have conspired with each other and the NCAA to fix the price Student Athletes are paid at zero. This conspiracy constitutes a horizontal restraint of trade and therefore a per se violation of antitrust law. Some methods of restraint are "so inherently and facially anti-competitive that an elaborate and burdensome inquiry into a demonstrable economic impact on competition in a relevant market is not required." Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield 552 F.3d 430, 434 (6th Cir. 2008). In this case, there are two grounds for an application of the *per se* rule against the anticompetitive conduct of the Conference Defendants: (1) a concerted refusal to deal with Student Athletes; and (2) a horizontal price-fixing conspiracy among the Conference Defendants.

See <u>Total Benefits Planning Agency, Inc.</u>, 552 F.3d at 435. All that is required under the *per se* rule is a showing that defendants entered a *per se* illegal agreement.[1]

## I.  **Plaintiffs Have Established Antitrust Injury.**

### A. **Injury to Plaintiffs' and Proposed Class Members' Rights of Publicity under Tennessee law.**

As explained in Plaintiffs' Memorandum in Response to Broadcast Defendants' Motion to Dismiss, Tennessee's common law right of publicity is broader than its statutory counterpart and does not include a fair use exception for NILs used in connection with a sports broadcast. To the extent necessary, Plaintiffs adopt and incorporate their arguments as to rights of publicity in their Memorandum in Response to Broadcast Defendants' Motion to Dismiss. Because Defendants have violated these rights, Plaintiffs have suffered antitrust injury.

### B. **Injury to Plaintiffs' and Proposed Class Members' Rights of Publicity under Other State Laws.**

Conference Defendants' Motion to Dismiss primarily focuses on the mistaken argument that Plaintiffs' and Class Members' antitrust claims fail because of their purported lack of any enforceable rights of publicity under Tennessee law. This argument, however, is nothing more than a meager attempt to convince the Court that this entire lawsuit pivots on the scope of Tennessee's right of publicity law. This couldn't be further from the truth. The anticompetitive restraint at issue is *national* in character – the anticompetitive effects of which are palpable in every state in the country. Furthermore, Defendants neglect to acknowledge that the proposed Class includes Student Athletes from every state, most of which do not provide fair use

---

[1] <u>See</u>, <u>e.g.</u>, <u>State Oil Co. v. Khan</u>, 552 U.S. 3, 10 (1997) (describing per se illegal agreements as those that "have such predictable and pernicious anticompetitive effect, and such limited potential for pro-competitive benefit"); and <u>Northern Pac. Ry. Co. v. United States</u>, 356 U.S. 1, 5 (1958) ("[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.").

{01193676.2 }

3

exceptions for sports broadcasts. O'Bannon v. NCAA, 7 F. Supp. 3d 955, 994 (N.D. Cal. 2014). Furthermore, the named Plaintiffs' images have been broadcast, and their rights of publicity therefore violated, throughout the nation, not just Tennessee. Accordingly, even if there were Tennessee state-law preclusions to Plaintiffs' rights of publicity (and there are none), such preclusions would not undermine any of the required elements for Plaintiffs' Sherman Act claim. O'Bannon, 990 F. Supp. 2d at 994. As the O'Bannon court explained, any particular state-law preclusions do not undermine antitrust claims unless every state prevents Student Athletes from asserting publicity rights to game broadcasts. Id. at 1006.

All Defendants have blatantly violated these rights. Broadcast Defendants live broadcast the images of Plaintiffs and Class Members; use at least some of Plaintiffs and Class Members' images in advertising for such broadcasts; use at least some of Plaintiffs' and Class Members' images in advertisements that promote others shows on their respective networks. Licensing Defendants and Conference Defendants license the right to such images without compensating the Student Athlete and without the Student Athletes' permission. In summary, Plaintiffs and Class Members have rights of publicity not only in Tennessee but in a majority of states, and the Defendants' conduct of restricting the free trade of these valuable rights constitutes precisely the injury that the antitrust laws were designed to prevent.

### C. Injury to Competition and Plaintiffs' Economic Interest in Their NIL.

Defendants request the Court to dismiss Plaintiffs' antitrust claims, relying on the asserted absence of legally cognizable rights of publicity for use of NILs with respect to sports broadcasts. The O'Bannon trial record contradicts this argument. Even in the absence of a legally cognizable right, the anticompetitive behavior alleged has resulted in injury to an entire sector of competition (all Student Athletes) and Student Athletes' ability to freely compete in the

market of their NIL.  See Agnew v. NCAA, 683 F.3d 328, 335 (7th Cir. 2012) (citation omitted).

In Agnew, one of the chief cases cited by Conference Defendants, the court recognized that "the

Sherman Act applies to commercial transactions, and the modern definition of commerce

includes 'almost every activity from which [an] actor anticipates economic gain.  No

knowledgeable observer could earnestly assert that big-time college football programs . . . do not

anticipate economic gain." Agnew, 683 F.3d at 340 (citation omitted).  The same analysis can be

applied here.

      As Judge Wilken explained in O'Bannon,  "even if some television networks  believed

that student-athletes lacked publicity rights in the use of their names, images, and likenesses,

they may have still sought to acquire these rights as a precautionary measure.  Businesses often

negotiate licenses to acquire uncertain rights." O'Bannon, 7 F. Supp. 3d at 994 (citing

Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818, 826

(8th Cir. 2007) (Colloton, J., dissenting) ("CBC surely can 'agree,' as a matter of good business

judgment, to bargain away any uncertain First Amendment rights that it may have in exchange

for the certainty of what it considers to be an advantageous contractual arrangement."); Hynix

Semiconductors, Inc. v. Rambus, Inc., 2006 WL 1991760, at *4 (N.D. Cal. July 14, 2006) ("a

negotiating patentee and licensee generally agree to a lower royalty rate if there is uncertainty as

to whether the patents are actually valid and infringed").  The NCAA's contracts with the

Broadcast Defendants named in this lawsuit contain express provisions purporting to assign

Plaintiffs' and Class Members' NIL rights. See O'Bannon, 7 F. Supp. 3d at 994.  These

provisions therefore directly contradict Defendants' position that Plaintiffs' NILs have not

suffered antitrust injury.

## II. **Plaintiffs Adequately Plead Antitrust Conspiracy.**

### A. **Conference Defendants Have Agreed to Exclude Student Athletes from NIL Market**

Plaintiffs allege a conspiracy and/or agreement among Conference Defendants to fix the compensation of Student Athletes for use of their NILs at zero. Compl. ¶ 103. This conspiracy has been effectuated by numerous affirmative acts, including but not limited to, the use of an anticompetitive "Release," Form 08-3a. Any conspiracy to fix prices, regardless of a purported rationale, is illegal *per se*. See, e.g. Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n, 493 U.S. 411, 421-23 (1990). The Complaint states that Conference Defendants have agreed with co-conspirator NCAA to enforce the NCAA's anticompetitive rules and bylaws that exclude Student Athletes from the market of licensing their NILs. Compl. ¶ 101. Each and every Conference Defendant is in agreement with the NCAA and its member institutions not to compensate Student Athletes for the commercial use of their NILs. Compl. ¶ 102. These agreements are expressed in the form of Conference and NCAA bylaws that restrict Student Athlete compensation. Compl. ¶ 103. These agreements and bylaws constitute a horizontal restraint of competition and a *per se* violation of antitrust laws. ¶ 173. The Complaint therefore clearly satisfies the Twombly pleading standards, especially before Plaintiffs have had an opportunity to conduct discovery.[2]

In Twombly, the issue was whether the plaintiffs plead facts indicating defendants entered into agreement as opposed to merely participating in parallel conduct. Twombly, 554 U.S. at 545 (U.S., 2008). In the present case, no legitimate dispute can exist concerning whether Conference Defendants are in agreement to restrict Student Athlete compensation. The question

---

[2] Plaintiffs firmly believe that discovery, as it did in O'Bannon, will reveal additional vertical restraints of trade perpetuated through broadcast agreements where Conference Defendants license the publicity rights that all Defendants now deny exist.

here is not whether Defendants are in agreement, but whether those agreements are anticompetitive and illegal under the Sherman Act.

## B. Conference Defendants Misapply <u>NCAA v. Board of Regents</u>

Conference Defendants argue that rules restricting Student Athletes from participating in the market for the licensing of their NILs are procompetitive as a matter of law under <u>NCAA v. Board of Regents of University of Oklahoma</u>, 468 U.S. 85 (1984). Conference Defendants misinterpret the holding of <u>Board of Regents</u>. In <u>Agnew</u>,, the Seventh Circuit clarified that "<u>Board of Regents</u>, the seminal case on the interaction between the NCAA and the Sherman Act, implies that *all* regulations passed by the NCAA are subject to the Sherman Act." 683 F.3d at 339 (emphasis in original). Conference Defendants argue that no agreement or bylaw that sets the NIL of Student Athletes at zero could violate antitrust law, but base their entire argument on the incorrect proposition that <u>Board of Regents</u> requires the Court to presumptively conclude that all NCAA and Conference bylaws fixing the valuation of Student Athletes NILs at zero are immune from antitrust scrutiny. Unfortunately for Conference Defendants, the portions from <u>Board of Regents</u> on which the Conference Defendants rely constitute non-binding dicta. As Judge Claudia Wilken concluded in <u>O'Bannon</u>:

> Although the NCAA has cited the Supreme Court's decision in Board of Regents as support for its amateurism justification, its reliance on the case remains unavailing. As explained in previous order, Board of Regents addressed limits on television broadcasting, not payments of student-athletes, and does not stand for the sweeping proposition that student-athletes must be barred, both during their college years and forever thereafter, from receiving any monetary compensation for the commercial use of their names, images, and likenesses. The Supreme Court's suggestion in Board of Regents that, in order to preserve the quality of the NCAA's product, student-athletes must not be paid was not based on any factual findings in the trial record and did not serve to resolve any disputed issues of law.

O'Bannon, 7 F. Supp. 3d at 999.  Judge Wilken further explained that <u>Board of Regents</u> carries no weight on the legality of NCAA' restrictions that prevent Student Athletes from receiving compensation because:

> Plaintiffs have also presented ample evidence here to show that the college sports industry has changed substantially in the thirty years since Board of Regents was decided.  Accordingly, the Supreme Court's incidental phrase in *Board of Regents* does not establish that the NCAA's current restraints on compensation are procompetitive and without less restrictive alternatives.

<u>Id</u>. at 999-1000.  For understandable reasons, Conference Defendants ignore the fact that <u>O'Bannon</u>, the only known case where NCAA and/or conference bylaws and rules that restrict Student-Athlete compensation have been directly challenged as an unreasonable restraint, found such restraints to be a violation of antitrust law. *Id.*  Contrary to Defendants' assertion, <u>O'Bannon</u> is therefore not an "outlier."  It stands as the one and only known case where the restrictive restraints before the Court with respect to the Conference Defendants have been fully debated and litigated.  Therefore, the Court should not follow the string of cases cited by Defendants in their attempt to convince the Court that these issues are well-settled.  Instead, Plaintiffs should be permitted to proceed to discovery in order to develop a trial record, like the plaintiffs in <u>O'Bannon</u>, so that the Court, at the appropriate time, may make a fully informed decision on these novel issues.

Dictum is a statement on a matter not necessarily involved in the case, and is not binding authority – an opinion expressed by a judge on a point not necessarily arising in the case. At the federal appellate level, dicta are not binding on future panels when the issue is fully litigated for the first time. <u>See</u>, <u>e.g.</u> <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 133 S. Ct. 1351, 1368 (2013); <u>Jama v. Immigration and Customs Enforcement</u>, 543 U.S. 335 (2005); <u>Diaz-Rodriguez v. Pep Boys Corp.</u>, 410 F.3d 56 ( 1st Cir. 2005).  It is well-settled that courts "are not bound to follow . . .

dicta in a prior case in which the point now at issue was not fully debated." Kirtsaeng, 133 S. Ct. at 1368 (2013) (citation omitted).

In Board of Regents, the Supreme Court held that the NCAA's policy for broadcasting college football games constituted a horizontal restraint of trade in violation of the Sherman Act. Board of Regents, 468 U.S. at 120. The sentences cited by Conference Defendants, particularly that "athletes must not be paid" had no bearing on the resolution of the issue before the Court. In fact, Board of Regents did not find that the restraints at issue in the present cast are procompetitive as a matter of law. Id. The Court in Board of Regents struck down an NCAA policy as an antitrust violation, stating "the NCAA's historic role in . . . in amateur athletics" did *not* water down the applicable antitrust standard." Board of Regents, 468 U.S. at 101. The restraints at issue here were not in any sense fully debated or litigated in Board of Regents. Therefore, the portions from Board of Regents that discuss amateurism rules are clearly non-binding dicta. O'Bannon, 7 F. Supp. 3d at 999.

Plaintiffs wish to make clear that the Complaint does not pray for a destruction of "amateurism." The prospect of allowing players to financially benefit from the use of their NIL in no way threatens the core objectives of "amateurism." Plaintiffs do not advocate an abandonment of rules that require Student Athlete enrollment, class attendance, and maintaining a certain GPA. The amateurism rules cited in Board of Regents will remain unscathed if the Court were to find that players should be able to compete in the market for their NILs.

Furthermore, the Supreme Court in Board of Regents was cautious to express that the nonprofessional character of college sports "can be viewed as procompetitive" (468 U.S. at 102) (emphasis added)), not that it must be so viewed in every instance or that rules restricting compensation for the use of Student Athletes' NILs automatically qualifies as procompetitive as

a matter of law.  In short, the restraint at issue in <u>Board of Regents</u> is not the restraint at issue in the present case.  <u>Board of Regents</u> focused on NCAA rules that prohibited individual schools from licensing broadcast rights, not NCAA rules that prohibit player compensation.  Here there is clearly a commercial transaction contemplated, and "the Sherman Act applies to commercial transactions."  <u>Agnew</u>, 683 F.3d at 340.

The Conference Defendants adopt rules restricting Student Athletes from receiving revenue that they would otherwise be entitled to in a restraint-free market.  In the context of antitrust law, there is no clear definition of what constitutes a commercial transaction, but the <u>Agnew</u> court endorsed the definition of a leading commentator on the subject, stating that "today the term 'commerce' is much broader than it was in the past, including almost every activity from which an actor anticipates economic gain."  <u>Id</u>. at 340.  The Conference Defendants' and school's attempts to secure the right to license Student Athletes' NILs clearly meet this definition.  Conference Defendants' have a strong economic incentive to attain the right to license Student Athletes' NILs to Broadcast and Licensing Defendants because it essentially enables Conference Defendants' to exploit a multi-billion dollar industry without the need to compensate the stars and labor force at the heart of the industry. To enforce this objective, Student Athletes are forced to relinquish their rights of publicity, which, in turn, are purportedly assigned to Broadcast and Licensing Defendants.   Conference Defendants, therefore, are mistaken in their characterization of <u>Board of Regents</u> and attempt to disguise snippets of sentences that are dicta as a Supreme Court blessing of an entirely different set of rules that are at issue here.

Conference Defendants are also misguided in their argument that "[f]ederal courts throughout the country have routinely applied <u>Board of Regents</u> to validate NCAA rules

prohibiting pay for play." <u>See</u> Doc. 215 at Page ID 799-801. Their argument essentially asks the Court to treat the NCAA and Conference no-compensation rules as presumptively competitive at the motion to dismiss stage. However, none of the five cases cited by Conference Defendants involved the restraint at issue here: agreements and conspiracies excluding Student Athletes from the market for their NILs and thereby fixing the price Student Athletes are paid at zero.

Conference Defendants incorrectly assert that the court in <u>Marucci Sports, LLC v. NCAA</u>, 751 F.3d 368 (5th Cir. 2014) applied <u>Board of Regents</u> "to validate NCAA rules 'pay for play.'" (Conf. Defendant Memo at 18). The plaintiff in <u>Marucci</u> was a baseball bat manufacturing company who challenged the NCAA and high school athletic associations' regulations of non-wood baseball bats, not rules that prohibit player compensation for the use of NILs. <u>Marucci Sports, LLC</u>, 751 F.3d 368. There is simply no basis for the Conference Defendants' to characterize <u>Marucci</u> as a case relevant to the restraint at issue here. Conference Defendants also misapply <u>Agnew v. NCAA</u>. In <u>Agnew</u>, the restraint at issue was the NCAA bylaw that caps athletic scholarships to one year. <u>Agnew</u>, 683 F.3d 328. Again, the anticompetitive restraints before the Court in the present case – restraints precluding Student Athletes from competing in the market for the licensing of their NILs – was not the restraint at issue in <u>Agnew</u>. Furthermore, <u>Agnew</u> merely suggests that when a league restraint concerns "eligibility," courts have a "license" to find for defendant, not that it should or must. <u>Id</u>. at 341. Conferences continue the theme by misapplying <u>Smith v. NCAA</u>, 139 F.3d 368 (3d Cir. 1998). In <u>Smith v. NCAA</u>, a Student Athlete sued the NCAA, alleging that the NCAA's enforcement of bylaws restricting Student Athletes from participating in athletics while enrolled in graduate programs other than her undergraduate institution violated the Sherman Act. 139 F.3d at 183. Once again, Conference Defendants attempt to portray a case as on point when it is simply not.

Conference Defendants continue, citing Law v. NCAA, 134 F.3d 110 (10th Cir. 1998). In Law, the plaintiff was an assistant basketball *coach* that challenged NCAA rules restricting limits on *coaches*' annual compensation. Id. Law, as with all the other cases cited by Defendant did not involve the anticompetitive restraint at issue in the present case.

Gaines v. NCAA 746 F. Supp. 738 (M.D. Tenn. 1990), the Conference Defendants' last cited case, is likewise inapplicable. As with every other case cited in Conference Defendants' Memorandum, Gaines v. NCAA did not involve the adjudication of the pay-for-play restraint at issue here. Gaines, 746 F. Supp. 738. In Gaines, the plaintiff did not challenge player compensation restrictions, but rather NCAA rules that provide a loss of amateur status when an athlete enters a professional draft or enters into an agreement with an agent to negotiate a professional contract, also known as the "no-draft" and "no agent" rules. Id. Furthermore, the Gaines opinion was analyzed under the harsher "likelihood of success" standard for an application for a temporary injunction. Id. As noted above, Plaintiffs in the present case are not challenging the no-draft or no agent rules that were challenged in Gaines. In denying the plaintiff's motion for a temporary injunction, the Gaines court explained that its holding with respect to the rules challenged by the plaintiff "by no means is creating a total exemption, but rather a very narrow one." Id. at 744. Therefore, because the Plaintiffs in the present case are not challenging the same rules that were challenged in Gaines, Gaines provides no support for Defendants' position that the restraints at issue before the Court have already been validated as procompetitive.

The Sixth Circuit case cited by Conference Defendants suffers from the same fatal flaw as the rest of their cited authorities. In Bassett v. NCAA, the court held that the Sherman Act does not apply to rules that prohibit *coaches* from providing Student Athletes with improper

inducements. 528 F.3d 426, 433 (6th Cir. 2008). The plaintiff was a former assistant football coach for the University of Kentucky, and the restraint at issue was the NCAA rule that requires schools to show cause for hiring a coach that had previously violated NCAA recruiting regulations. Id. The court held that the restraint at issue was not subject to the Sherman Act because *commercial activity* was not implicated. Id. at 334. The restraint at issue in the present case is easily distinguishable from *Bassett*. Here, it is clear that NCAA and Conference rules that prohibit Student Athletes from participating in the marketplace for the licensing of their NILs implicates commercial activity. As the Complaint states, the market for college sports has become a multi-billion dollar industry, and the rights to broadcast games, which includes the rights to use Student Athletes' NILs, is at the center of such market. Compl. ¶ 124. The exclusion of Student Athletes from the NILs market is manifestly commercial in nature and an anticompetitive mechanism designed to exploit the commercial value of Student Athletes' NILs.

III. **Plaintiffs Adequately Plead a Relevant Market.**

The Complaint should also not be dismissed because, contrary to Defendants' bald assertion, Plaintiffs do plead a plausible relevant product market. Compl. ¶¶ 124-130. In order to avoid duplicative analysis, Plaintiffs hereby incorporate Section IV A.2 from their Response to Broadcast Defendants' Motion to Dismiss.

## **CONCLUSION**

For the reasons stated in this Response as well as Plaintiffs' Responses to the Motions to Dismiss filed by the Broadcast and Licensing Defendants, Conference Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

BONE McALLESTER NORTON PLLC


*/s/ Stephen J. Zralek*
Stephen J. Zralek, BPR #18971
John P. Branham, BPR #002552
Patricia J. Cottrell, BPR #004627
William J. Haynes III, BPR # 017398
511 Union Street, Suite 1600
Nashville, TN 37219
615-238-6300 telephone
szralek@bonelaw.com
jbranham@bonelaw.com
pcottrell@bonelaw.com
whaynes@bonelaw.com

STEWART JOHNSON CONNER &
MANSON, LLP
Richard Manson, BPR #04351
Ronald A. Stewart, BPR # 23042
215 2nd Ave. North, Suite 300
Nashville, TN 37201

McMURTRAY LAW FIRM, PLLC
Patrick D. McMurtray, BPR #31597
P.O. Box 80
Christiana, TN 37037

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of the foregoing document on this 13th day of February, 2015, via ECF, on the following:

***Attorneys for Defendants ABC Inc. and ESPN Inc.; ESPN d/b/a SEC Network; ESPN d/b/a Longhorn Network***
Samuel D. Lipshie, Esq.
Joel D. Eckert, Esq.
Bradley Arant Boult Cummings, LLP
1600 Division Street
Suite 700
Nashville Tennessee  37203-0025


***Attorneys for ABC, Inc and ESPN, Inc.***
Roger G. Brooks, Esq.
Evan R. Chesler, Esq.
Stefan H. Atkinson, Esq.
Daniel A. Richards, Esq.
Joe W. Earnhardt, Esq.
Cravath Swain & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York New York 10019

Nathan E. Siegel, Esq.
Levine Sullivan Koch & Schultz, LLP
1899 L Street NW
Suite 200
Washington DC 20036

***Attorneys for CBS Broadcasting, Inc.***
R. Dale Grimes, Esq.
Bass Berry & Sims PLC
150 Third Avenue
Suite 2800
Nashville Tennessee  37201

Jim Quinn, Esq.
Yehudah L. Buchweitz
Eric S. Hochstadt, Esq.
Weil Gotshal & Manges, LLP
767 Fifth Avenue
New York New York 10153

{01193676.2 }

***Attorneys for NBCUniversal Media, LLC***
Kelli L. Sager, Esq.
Arthur J. Burke, Esq.
James W. Haldin, Esq.
Dana M. Seshens, Esq.
David Wright Tremaine LLP
865 South Figueroa Street
Suite 2400
Los Angeles California 90017


***Attorneys for Defendant Southeastern***
***Conference (SEC)***
Aubrey B. Harwell, Jr., Esq.
James F. Sanders, Esq.
J. Isaac Sanders, Esq.
Neal & Harwell P.C.
150 Fourth Avenue North
Suite 2000
Nashville Tennessee  37219-2498

Robert W. Fuller, Esq.
Mark W. Merritt, Esq.
Robinson Bradshaw & Hinson, P.A.
101 North Tryon Street
Suite 1900
Charlotte North Carolina 28246


***Attorneys for FOX Broadcasting Company, Inc. and Big Ten Network, LLC***
Hal D. Hardin, Esq.
Hardin Law Office
211 Union Street
Suite 200
Nashville Tennessee  37201

Kevin T. Baine, Esq.
Thomas G. Hentoff, Esq.
Carl R. Metz, Esq.
John E. Schmidtlein
Williams & Connolly LLP
725 Twelfth Street N.W.
Washington DC 20005

***Attorneys for Big Ten Conference (Big Ten)***
Jay S. Bowen, Esq.
William V. Parsons III, Esq.
Bowen Hayes & Kreisberg, PLC
47 Music Square East
Nashville, Tennessee  37203

Andrew Rosenman, Esq.
Britt Marie Miller, Esq.
Mayer Brown
71 S. Wacker Drive
Chicago Illinois  60606

Richard J. Favretto, Esq.
Mayer Brown, LLP
1999 K Street N.W.
Washington DC  20006

***Attorneys for Ohio Valley Conference (OVC)***
Margaret L. Behm, Esq.
Tyler C. Yarbro, Esq.
Dodson Parker Behm & Capparella PC
1310 6th Avenue North
Nashville Tennessee  37208

***Attorneys for Atlantic Coast Conference (ACC)***
D. Alexander Fardon, Esq.
Harwell Howard Hyne Gabbert & Manner PC
333 Commerce Street
Suite 1500
Nashville, Tennessee  37201

Jonathan P. Heyl, Esq.
Smith Moore Leatherwood LLP
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202

Gregory G. Holland, Esq.
D. Erik Albright, Esq.
Smith Moore Leatherwood LLP
300 N. Greene Street
Suite 1400
Greensboro, North Carolina 27401

***Attorneys for Pac-12 Conference and Big East Conference, Inc.***
John R. Jacobson, Esq.
James N. Bowen, Esq.
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee  37203

Scott P. Cooper, Esq.
Jennifer L. Jones, Esq.
Sarah Kroll-Rosenbaum
Proskauer Rose LLP
2049 Century Park East
Suite 3200
Los Angeles, California  90067

***Attorneys for The Big 12 Conference, Inc. and Conference USA***
Reid D. Leitner, Esq.
J. Gregory Grisham, Esq.
Leitner Williams Dooley & Napolitan, PLLC
414 Union Street
Suite 1900
Nashville Tennessee  37219

Leane K. Capps, Esq.
Polsinelli PC
Saint Ann Court
2501 North Harwood Street
Suite 1900
Dallas Texas  75201

Amy D. Fitts, Esq.
Brett C. Randol, Esq.
Polsinelli PC
900 W. 48th Place
Suite 900
Kansas City Missouri  64112

***Attorneys for CBS Collegiate Sports Properties, Inc.***
Brian E. Robinson, Esq.
Robert C. Walters, Esq.
Bradley G. Hubbard, Esq.
Gibson, Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
{01193676.2 }

19

***Attorneys for JMI Sports LLC***
Amy J. Everhart, Esq.
Maria A. Spear, Esq.
Everhart Law Firm PLC
1400 Fifth Avenue North
Nashville Tennessee  37208

Louis P. Petrich, Esq.
Daniel Mayeda, Esq.
Leopold, Petrich & Smith PC
Suite 3100
2049 Century Park East
Los Angeles, California 90067

***Attorneys for TeleSouth Communications, Inc.***
John S. Hicks, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
211 Commerce Street
Suite 800
Nashville, Tennessee  37201

Walker W. Jones III, Esq.
Samuel D. Gregory, Esq.
W. Scott Welch, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi  39211

***Attorneys for William Morris Endeavors, LLC; IMG Worldwide, Inc. and IMG College***
W. Scott Sims, Esq.
Sims Funk, PLC
3310 West End Avenue
#410
Nashville, Tennessee  37203

David R. Singer, Esq.
Richard L. Stone, Esq.
Andrew J. Thomas, Esq.
Jenner & Block, LLP
633 West 5th Street
Suite 3600
Los Angeles California 90071

Kenneth L. Doroshow, Esq.
Jenner & Block, LLP
1099 New York Avenue N.W.
Suite 900
Washington D.C. 20001


**Attorneys for Learfield Sports, LLC**
Thomas B. Walsh IV, Esq.
M. Brett Johnson, Esq.
Thomas M. Melsheimer, Esq.
Grant Kojis Schmidt, Esq.
Fish & Richardson PC
1717 Main Street
Suite 5000
Dallas Texas 75201

Gail Vaughn Ashworth, Esq.
Wiseman Ashworth Law Group PLC
511 Union Street
Suite 800
Nashville Tennessee  38219


**Attorneys for T3 Media, Inc.**
Robb S. Harvey, Esq.
Todd R. Hambidge, Esq.
Waller Lansden Dortch & Davis, LLP
Nashville City Center
Suite 2700
511 Union Street
Nashville Tennessee  37219


                                                    */s/ Stephen J. Zralek*_____