# EXHIBIT 5

2014 WL 5585339
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

SMALL BUSINESS BODYGUARD, INC.,
Plaintiff and Counterclaim Defendant,
v.
HOUSE OF MOXIE, INC., Defendant,
Counterclaimant, and Third Party Plaintiff
v.
Rachel Rodgers and Rachel Rodgers
Law Office, Third Party Defendants
and Counterclaim Defendants.

No. 14 Civ. 7170(CM). | Filed Oct.
30, 2014. | Signed Oct. 31, 2014.

**MEMORANDUM DECISION AND ORDER
GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS**

McMAHON, District Judge.

**\*1** Plaintiff Small Business Bodyguard, Inc. ("SBBI"), a
New Jersey corporation, and Defendant House of Moxie
("HOM"), a Delaware corporation, are embittered former
business partners. Pursuant to a joint venture agreement, they
created an advisory "e-book" and related media for small
business owners. Their partnership fractured in the spring
of 2014, when they wound up their joint venture pursuant
to a new agreement. The dissolution agreement assigned all
rights to the e-book, related media, and internet sales of those
products to SBBI.

SBBI filed the instant complaint when HOM purported to
rescind the dissolution agreement and began selling materials
that SBBI allegedly had the sole right to sell under the
assignment. The complaint alleges (1) breach of contract;
(2) unjust enrichment; (3) copyright infringement under 17
U.S.C. § 101 *et seq.*; (4) trademark infringement and unfair
competition in violation of the Lanham Act, 15 U.S.C.
§ 1125(a); (5) cybersquatting in violation of 15 U.S.C.
§ 1125(d); (6) trademark dilution in violation of 15 U.S.C.
§ 1125(c); and (7) common law unfair competition. HOM
has moved to dismiss the complaint in its entirety under
Fed.R.Civ.P. 12(b)(6).

For the reasons stated below, the motion to dismiss is
GRANTED as to Counts 3–6 and DENIED as to Counts 1,
2 and 7.

**BACKGROUND**

The following allegations, taken from the complaint, are
presumptively true for purposes of this motion.

Plaintiff SBBI is owned by attorney and third party defendant
Rachel Rodgers. In May 2013, SBBI entered a joint venture
agreement with Defendant HOM. The purpose of the joint
venture was to create and sell written advice to small business
owners that would be published in media including an e-book.

The partnership began to sour in August 2013, when,
according to the complaint, HOM started shirking its duties
under the joint venture agreement. SBBI alleges that HOM
began failing to live up to its obligations by, inter alia, failing
to provide usable promotional materials and failing to devote
sufficient time to joint projects. This continued into 2014.

On June 7, 2014, the parties signed a dissolution agreement
and wound up their joint venture. The dissolution agreement
assigned all rights to the jointly created e-book, related media,
and a website created to sell those materials to SBBI.

The agreement expressly gave the parties the right to rescind
if SBBI was late in making payments described in §§ 1.1,
1.2, and 2.1. Those payments were scheduled to compensate
HOM for the assignment and revenues already due and owing
to HOM under the joint venture agreement. (*See* Dissolution
Agreement, Docket # 18, §§ 1.4, 2.3). By contrast, no
portion of the dissolution agreement specifically provides for
rescission in the event of nonpayment or late payment of
the "referral fees" described in § 3 of the agreement, which
compensated HOM for its role in some post-dissolution sales.
In the event of rescission, ownership of the e-book and related
media would be "governed by the applicable joint ownership
rules under U.S. Copyright and Trademark law." (Compl.¶
20).

**\*2** In August 2014, HOM claimed that a single late payment
of the referral fees described in § 3 of the agreement
constituted a material breach of the agreement, thereby
permitting it to rescind the entire dissolution agreement. SBBI
vigorously disputed that rescission was available to remedy

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

the late payment. It argued that HOM had an adequate remedy at law and that the agreement itself does not expressly provide for rescission in the event of a late payment under § 3, as it does for late payments otherwise due under §§ 1.1, 1.2 and 2.1.

Nevertheless, on the basis of its purported rescission, HOM claimed that it was now again a co-owner of the e-book and related media. It proceeded to sell copies of them—in their true form and bearing the SBBI mark—through two websites. The first website had a name similar to SBBI's website, and SBBI alleges that HOM's website was both a verbatim reproduction of SBBI's website and that it contained errors that diluted the brand. (*Compare* Compl. ¶¶ 32–33 *with* ¶ 43(b).) The second website was a previously existing website bearing a completely different name and selling a variety of products, but also sold the genuine e-book and related genuine materials bearing true SBBI marks.

SBBI filed the instant suit in September 2014, complaining in Counts 1, 2 and 7 that HOM had no right to rescind the dissolution agreement and that its purported rescission and associated sales of the e-book constituted common law unfair competition, were themselves material and harmful breaches of the June 7 agreement, and caused damages to SBBI in excess of $75,000. SBBI also alleged that these breaches allowed HOM to enrich itself unjustly, but neither pleaded the unjust enrichment claim in the alternative nor pleaded any facts distinct from those relevant to the breach-of-contract claim in support of the unjust enrichment claim.

SBBI also asserted four federal claims, which are parallel to its common law claims.

In Count 3, SBBI alleges copyright infringement under 17 U.S.C. § 101 *et seq.* The complaint does not allege the existence of any copyright that has been registered in accordance with the statute. Instead, it merely references a pending application.

In Count 4, SBBI alleges trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a). It alleges that the infringement has been accomplished through HOM's sale of the jointly created e-book and associated materials in alleged violation of the dissolution agreement, which HOM had no right to rescind.

In Count 5, SBBI alleges that HOM's website constitutes "cybersquatting" in violation of 15 U.S.C. § 1125(d). To

support the required finding of bad faith, SBBI alleges only that HOM created a website with a name confusingly similar to SBBI's website.

Finally, in Count 6, SBBI alleges trademark dilution of a "famous" mark in violation of 15 U.S.C. § 1125(c). It pleads no particular facts permitting the conclusion that the mark is "famous ."

**\*3** In its brief opposing HOM's motion to dismiss, SBBI alleges a coterie of new facts in an effort to amend its complaint *sub silentio,* without seeking the Court's leave to amend and more than a month after filing the complaint. The Court will not consider any fact raised for the first time in the opposition papers as a well-pleaded allegation for purposes of the motion to dismiss. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998) (complaint cannot be "amended" through facts raised only in opposition to 12(b)(6) motion to dismiss).

## DISCUSSION

### I. Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations inferences in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007); *Arista Records LLC v. Lime Grp. LLC,* 532 F.Supp.2d 556, 566 (S.D.N.Y.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

When presented with a motion to dismiss pursuant to Rule 12(b) (6), the Court may consider documents that are

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

## II. SBBI Has Failed to State Any Federal Law Claim Upon Which Relief Can be Granted.

Each of SBBI's claims under federal law-Counts 3 through 6–fails, as pleaded, to state a claim on which relief can be granted.

### A. *Count 3 is Dismissed Without Prejudice.*

Read liberally, the pleading alleges that HOM infringed SBBI's "copyrightable material" to the extent that it infringed "the Product," with "the Product" hazily defined as "the intellectual property, goodwill, and business assets related to the Small Business Bodyguard brand and associated products, which offer business formation, development, and protection information, coaching, and advice to entrepreneurs and emerging businesses." (Compl.¶ 1.) The complaint alleges that HOM infringed SBBI's copyrights, in violation of 17 U.S.C. § 101 *et seq.* SBBI does not allege that it had a validly registered copyright in anything at the time the complaint was filed.

**\*4** "A properly plead[ed] copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Warren v. John Wiley & Sons, Inc.,* 952 F.Supp.2d 610, 616 (S.D.N.Y.2013) (quoting *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992)). The first and third elements are missing from SBBI's complaint.

First, SBBI's murky designation of what constitutes "the Product" is not a satisfactory allegation of "which specific original works are the subject of the copyright claim," *Warren,* 952 F.Supp.2d at 616.

Second, and more important, SBBI fails to allege that it has a validly registered copyright in anything. Without a valid registration by the date the lawsuit is commenced, a party lacks standing to sue for copyright infringement. *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.,* No. 09–cv–2669 (LAP), 2012 WL 1021535, at \*5

(S.D.N.Y. Mar. 6, 2012) (collecting cases). The complaint in this case alleges that "the Product" and unspecified "related written material" are "copyrightable" materials, and alleges further that it has filed an *application* for a valid copyright registration that "pertain[s]" to "the Product." (Compl.¶ 57.) Mere application, however, is insufficient: "Courts in this Circuit ... require [ ] that a plaintiff either hold a valid copyright registration outright or have applied and been refused a registration *prior* to filing a civil claim," meaning that "[a] pending application does not suffice." *Muench,* 2012 WL 1021535, at \*5. Pending registrations are insufficient because " § 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed." *Id.* As such, "even if registration is later obtained," a complaint filed before such registration is obtained must be dismissed. *Accurate Grading Quality Assur., Inc. v. Thorpe,* No 12–cv–1343 (ALC), 2013 WL 1234836, at \*7 (S.D.N.Y. Mar. 26, 2013) (dismissing claim).

Because the complaint does not allege that SBBI has satisfied this "precondition to filing a [copyright infringement] claim," *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), Count 3 is dismissed. Should SBBI eventually obtain the necessary copyright registration, it may file a new action or seek leave to amend in this one, so dismissal of count 3 is necessarily without prejudice.

### B. *Count 4 is Dismissed With Prejudice.*

In Count 4, SBBI claims that HOM violated § 43(a) of the Lanham Act. However, SBBI does not allege facts supporting an inference of the type of harm § 43(a) was enacted to prevent: customer confusion. Its real claim is not under federal trademark law at all, but rather under New York contract law, which polices the breaches of joint venture agreements.

**\*5** Section 43(a) prohibits any person from using in commerce, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a) (1). The purpose of this section is "to prevent consumer confusion regarding a product's source ... and to enable those that fashion a product to differentiate it from others on the market." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 61–62 (2d Cir.2000) (internal quotations omitted).

The complaint alleges sales that are unlikely to cause the customer confusion § 43(a) discourages. Under that Section, the "central inquiry" is the "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the *source* of the goods in question." *Id.* (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978)) (emphasis added). As this Court has previously observed, such "confusion ordinarily does not exist when"—as here —"a genuine article bearing a true mark is sold." *Bel Canto Design, Ltd. v. MSS Hifi, Inc.,* 837 F.Supp.2d 208, 222–23 (S.D.N.Y.2011) (quoting *NEC Elecs. v. CAL Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987) (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368–69, 44 S.Ct. 350, 68 L.Ed. 731 (1924))); *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1023 (2d Cir.1989) (when genuine article sold, no possibility of confusion exists).

The complaint alleges in substance that HOM is violating the dissolution agreement—which assigned all rights in the merchandise—by selling the jointly created e-book and related media, in their true forms and bearing a true SBBI mark. There is no allegation that HOM created other goods, branded them with the SBBI mark, and put them out into the marketplace. While the complaint alleges in conclusory fashion that these sales of genuine goods are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of HOM with SBBI, or as to the origin, sponsorship, or approval of HOM's goods, services or commercial activities with SBBI," it pleads not a single fact in support of that statement.

HOM's sale of these jointly created goods only brings SBBI to court because of a dispute over a "failed joint venture agreement." *Kitty Walk Systems, Inc. v. Midnight Pass Inc.,* 431 F.Supp.2d 306, 310 (E.D.N.Y.2006). It is well settled that a former co-venturer's allegedly unauthorized sale of jointly created goods does not offend the Lanham Act. "There is no question but that any goods purchased are precisely what they purport to be-the only question is which party has the right to sell products and the apportionment of any profit. As such, this case is not one of consumer confusion that can be relied upon to support a Lanham Act claim, but a case alleging breach of contract as to authentic goods ... no claim for trademark or copyright infringement or unfair competition will lie." *Id.; see also Scientific Computing Associates, Inc. v. Warnes,* No. 07–cv–6351, 2011 WL 1327398 (W.D.N.Y. Apr.5, 2011) (same); *Christopher Norman Chocolates, Ltd.*

*v. Schokinag Chocolates N. Am., Inc.,* 270 F.Supp.2d 432, 436 (S.D.N.Y.2003) (casting doubt on § 43(a) claim where "the parties are not competitors, nor are there two similar competing products. Rather, the parties are fractured parts of the same enterprise, and the product at issue is the fruit of that enterprise." (quoting *Ableman v. Polinex Plastic Prods. Canada, Ltd.,* 92–cv–4112 (JFK), 1992 WL 212471, at *3 (S.D.N.Y. Aug. 26, 1992)).

**\*6** SBBI seeks to avoid this rule by pointing out that the parties dissolved their joint venture and assigned all rights in the jointly created products to SBBI, two months before the alleged § 43(a) violations began. (*See* Compl. ¶ 1 ("Nature of the Action ... This action arises from [the dissolution] ... contract ... dated June 7, 2014.")). But "the Lanham Act is designed to address the registration and infringement of trademarks, not ownership disputes arising out of contracts." *Gibralter, P.R., Inc. v. Otoki Grp., Inc.,* 104 F.3d 616, 619 (4th Cir.1997) (plaintiff had no Lanham Act claim rising from the defendant's "alleged violation of the Joint Venture Agreement between the two parties."). That the dispute here arises out of the alleged violation of a joint venture *dissolution* agreement, rather than the alleged violation of the initial joint venture agreement, does not transform this breach-of-contract claim into a claim for trademark infringement. SBBI does not have a federal trademark infringement claim merely because "instead of relying on the contract claims [alone] ... [it has] tried to frame trademark issues that immediately vanish[; its trademark claims amount to] a coat of water-soluble paint that washes away to reveal the contract dispute underneath." *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.,* 272 F.3d 912, 916 (7th Cir.2001).

If its allegations prove true, SBBI will have a remedy under contract law. It has not, however, stated a claim for unfair competition under § 43(a) of the Lanham Act. Count 4 is dismissed with prejudice.

### C. *Count 5 is Dismissed With Prejudice.*
In Count 5, SBBI alleges that HOM's actions violate the Anticybersquatting Consumer Protection Act ("ACPA"). But SBBI fails to allege anything approaching the "cybersquatting" phenomenon the statute prohibits.

The ACPA, codified at 15 U.S.C. § 1125(d), was enacted to prohibit a party from buying up internet domain names for the purpose of ransoming them to the companies or individuals who might more naturally be expected to hold them. *See Lewittes v. Cohen,* No. 03–cv–189 (CSH), 2004

WL 1171261, at *8 (S.D.N.Y. May 26, 2004). SBBI does not allege that HOM had any such purpose, complaining merely that HOM created a website with a confusingly similar name to SBBI's website in order to sell their jointly created e-book. As Judge Koeltl recently explained, "the allegation that the defendants infringed the plaintiff's trademark in registering and using a confusingly similar domain name, in and of itself, is insufficient to establish the 'bad faith intent to profit' [necessary to stating a claim] under the ACPA." *Kaplan, Inc. v. Yun,* No. 13–cv–1147 (JGK), 2014 WL 1689040, at *7 (S.D.N.Y. Apr. 30, 2014); *accord Gioconda Law Grp. PLLC v. Kenzie,* 941 F.Supp.2d 424, 437 (S.D.N.Y.2013).

Here, as in *Kaplan,* SBBI's cybersquatting claim "simply show[s] another aspect of the alleged trademark infringement, rather than an attempt to profit specifically from 'squatting' on the domain name with bad faith. These allegations do not suggest that the defendants 'perpetrated the core activities that threaten to result in the paradigmatic harm that the ACPA was enacted to eradicate,' that is, 'the proliferation of cybersquatting—the Internet version of a land grab.' " *Id.* (quoting *Lewittes,* 2004 WL 1171261, at *8).

**\*7** Count 5 is dismissed with prejudice.

### D. *Count 6 is Dismissed With Prejudice.*

In Count 6, SBBI alleges unlawful dilution of its "famous" mark in violation of 15 U.S.C. § 1125, but fails to allege facts permitting an inference of fame.

Section 1125(a) protects unregistered marks from dilution only if they are "widely recognized by the general consuming public of the United States." In practice, marks only meet this standard if they possess a "substantial degree of fame," *TCPIP Holding Co., Inc. v. Haar Commc'ns., Inc.,* 244 F.3d 88, 99 (2d Cir.2001). In enacting the measure, Congress held up Dupont, Buick, and Kodak as examples of the brands it wished to protect—that is, brands which "for the major part of the [20th] Century have been household words throughout the United States." *Id.* Because of the high levels of recognition required, very few trademarks qualify as famous marks. *See* 3 J. Thomas McCarthy, *Trademarks and Unfair Competition,* § 24:92 (4th ed.2002).

"Moreover, the degree of fame required for protection under the [act] ... must exist in the general marketplace, not in a niche market ... Thus, fame limited to a particular channel of trade, segment of industry or service, or geographic region is

not sufficient to meet that standard." *Christopher D. Smithers Found., Inc. v. St. Luke's–Roosevelt Hosp. Ctr.,* No. 00–cv–5502 (WHP), 2003 WL 115234, at *5 (S.D.N.Y. Jan. 13, 2003)* (collecting cases).

There is not a single factual allegation in the complaint admitting of an inference that the mark "Small Business Bodyguard" is recognized by a broad swathe of this country's general consuming public. SBBI's only effort to allege the requisite fame is to allege that " 'Small Business Bodyguard,' the title of SBBI's Product (the 'SBBI Trademark') and the URL of SBBI's Website (www.smallbusinessbodyguard.com) is [sic] widely recognized by consumers." (Compl.¶ 71.) This conclusory language—which does not even amount to a boilerplate recitation of the statute, since the "consumers" are not alleged to be nationwide—falls far short of the sort of allegation required to plead a claim under § 1125.

Count 6 is, therefore, dismissed.

Because there is literally no way, on the facts alleged, that SBBI could ever fall within the small group of elite companies of long standing that are protected under § 1125, Count 6 is dismissed with prejudice.

### III. The State Law Claims.

### A. *The Court Reaches These Issues Through 28 U.S.C. § 1332.*

In its complaint, SBBI only invoked the Court's original jurisdiction over the federal questions asserted in Counts 3–6. It asked the Court to review its state law claims in Counts 1, 2, and 7 through its supplemental jurisdiction under 28 U.S.C. § 1367. However, while the complaint does not specifically invoke diversity jurisdiction, it pleads all the elements necessary to establish its existence. The complaint alleges that a domiciliary of one state—New Jersey plaintiff SBBI—is suing a domiciliary of another state—Delaware defendant HOM—for damages in excess of $75,000. The Court thus has jurisdiction over these claims under 28 U.S.C. § 1332.

### B. *SBBI Has Adequately Pleaded a Breach of Contract Claim.*

**\*8** SBBI's breach of contract claim easily withstands Rule 12(b)(6) scrutiny. HOM complains that SBBI has failed to allege damages sufficiently; that borders on the frivolous.

SBBI has pleaded that HOM's alleged breach of contract in selling the parties' jointly created product through its own competing website led SBBI to lose sales. No more is required.

### C. *The Unjust Enrichment Claim in Count 2 May Proceed As An Alternative to Count 1.*

As SBBI appears to concede in its opposition papers, New York law does not permit one to recover for a contractual breach under theories of breach of contract *and* unjust enrichment. Rather, the two theories must be pleaded in the alternative. *See Rabin v. MONY Life Ins. Co.,* 387 Fed. App'x 36, 42 (2d Cir.2010). SBBI claims to have pleaded its Count 2 claim for unjust enrichment in the alternative. I see no such thing in the complaint. I will, however, deem Count 2 amended to plead the two theories of recovery in the alternative.

### D. *SBBI Has Stated a Claim for Unfair Competition Under New York Law.*

HOM argues that Count 7's claim of common law unfair competition fails for the same reasons that its Lanham Act claim fails, namely, that this dispute arises between embittered partners rather than competitors.

While it is generally true that New York's law of unfair competition mirrors § 43(a) of the Lanham Act, the Court is not convinced that New York law so conclusively precludes relief here that it would be appropriate to dismiss Count 7 at this pre-answer stage of litigation.

"New York courts have noted the incalculable variety of illegal practices falling within the unfair competition rubric ... calling it a broad and flexible doctrine that depends more upon the facts set forth ... than in most causes of action." *Roy Export Co. Estab. v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1105 (2d Cir.1982) (internal quotation marks and citations omitted). Indeed, New York's law of unfair competition "has been extended ... to situations where the parties are not even in competition." *ITC Ltd. v. Punchgini, Inc.,* 9 N.Y.3d 467, 476, 850 N.Y.S.2d 366, 880 N.E.2d 852 (quoting *Electrolux Corp. v. ValWorth, Inc.,* 6 N.Y.2d 556, 567, 190 N.Y.S.2d 977, 161 N.E.2d 197 (N.Y.1959)). Thus, while some competitive injury is required to advance an unfair competition claim, a practice "grounded in either deception or appropriation of the exclusive property of the plaintiff" can constitute unfair competition in New York. *See, e .g., H.L. Hayden Co.,* 879 F.2d at 1025; *Telecom Int'l Am., Ltd. v. AT & T Corp.,* 280 F.3d 175, 197 (2d Cir.2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship,").

In light of these broad statements, the Court is not prepared to say that SBBI fails to state an unfair competition claim under New York law. Certainly HOM has cited the court to no New York case that would preclude relief on the facts alleged. The motion to dismiss Count 7 is, therefore, denied.

### CONCLUSION

**\*9** For the foregoing reasons, the motion to dismiss is GRANTED as to Count 3 without prejudice, as to Counts 4, 5 and 6 with prejudice, and is otherwise DENIED. The Clerk of the Court is directed to remove Docket No. 11 from the Court's list of pending motions.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:14-cv-01945 Document 270-5 Filed 03/06/15 Page 7 of 7 PageID #: 2400