# United States Court of Appeals
## For the Eighth Circuit

___

No. 14-2117

___

Steve Ray

*Plaintiff - Appellant*

v.

ESPN, Inc.; ESPN CLASSIC, Inc.; ESPN CLASSIC EUROPE, Inc.

*Defendants - Appellees*

___

Appeal from United States District Court
for the Western District of Missouri - Kansas City

___

Submitted: January 14, 2015
Filed: April 22, 2015
[Published]

___

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

___

PER CURIAM.

 Steve "Wild Thing" Ray brought suit against ESPN, Inc.; ESPN Classic, Inc.; and ESPN Classic Europe, Inc. (collectively, "ESPN"), asserting state-law tort claims



related to ESPN's re-telecast of his wrestling performances. The district court[1] held that the Copyright Act preempts Ray's claims and therefore dismissed Ray's suit for failure to state a claim. We affirm.

## I. *Background*

Ray wrestled professionally in the Universal Wrestling Federation (UWF) from 1990 to 1994. He alleges that he wrestled in the UWF for pecuniary gain and that "[e]ach [of his] match[es] was filmed for future use to generate revenue." Ray specifically agreed with a representative of the UWF that the films would be "sold and used." Since his retirement from the UWF in 1994, Ray has, among other things, promoted healthcare products and weightlifting supplements.

According to Ray, ESPN has obtained certain films of his wrestling matches and re-telecast them throughout North America and Europe without first obtaining his "consent to use [his] identity, likeness, name, nick name, or personality to depict him in any way." Ray does not allege, however, that ESPN obtained the films unlawfully. Because of ESPN's alleged actions, Ray filed suit against ESPN in the Circuit Court of Jackson County, Missouri, asserting four claims under Missouri state law: (1) invasion of privacy, (2) misappropriation of name, (3) infringement of the right of publicity, and (4) interference with prospective economic advantage.

ESPN removed the case to federal court. ESPN then moved to dismiss the entire case under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Copyright Act, 17 U.S.C. § 101 *et seq.*, preempts Ray's claims. In analyzing ESPN's motion to dismiss, the district court correctly noted at the outset of its opinion that Ray's first two claims—invasion of privacy and misappropriation of name—allege the same tort under Missouri law. *See Nemani v. St. Louis Univ.*, 33 S.W.3d 184, 185 (Mo. 2000)

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

-2-

(en banc) (citation omitted). The court also noted that Ray did not challenge ESPN's contention that the Copyright Act preempts Ray's claims for invasion of privacy and interference with prospective advantage; therefore, the court assumed these claims were waived. *See Crossett Paper Mills Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 476 F.3d 578, 580 n.2 (8th Cir. 2007).

The court ultimately held that the Copyright Act preempts Ray's claims. In so holding, the court noted that:

> [Ray's] wrestling performances were part of the copyrighted material, and his likenesses could not be detached from the copyrighted performances that were contained in the films. . . . [Ray] has not alleged that his name and likeness were used to promote or endorse any type of commercial product. Rather, [Ray] complains about ESPN airing wrestling performances that have been captured on video. Thus, [Ray's] complaints are based solely on ESPN airing video recordings depicting him in a "work of authorship," which is plainly encompassed by copyright law.

## II. *Discussion*

On appeal, Ray argues that the district court erred in dismissing his claims as preempted under the Copyright Act. We review de novo the district court's dismissal for failure to state a claim. *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 930 (8th Cir. 2013) (citation omitted). In so doing, we assume "all facts in the complaint to be true and construe[] all reasonable inferences from those facts most favorably to the complainant." *Id.* (quotation and citations omitted).

The Copyright Act will preempt Ray's state-law claims if the following two conditions are satisfied:

> (1) the work at issue is within the subject matter of copyright as defined in § 102 and 103 of the Copyright Act, and (2) the state law created right

-3-

Appellate Case: 14-2117   Page: 3   Date Filed: 04/22/2015 Entry ID: 4267493
Case 3:14-cv-01945   Document 279-1   Filed 04/23/15   Page 3 of 7 PageID #: 2495

is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 [of the Copyright Act].

*Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993) (citation and footnote omitted); *see also* 17 U.S.C. § 301(a). We analyze each of these two conditions in turn.

## A. Subject Matter of Copyright

The Copyright Act defines the subject matter of copyright generally as "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "Works of authorship" include "motion pictures and other audiovisual works." *Id.* at § 102(a)(6). "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* at § 101.

The filming of Ray's wrestling performances clearly generated an "original work[] of authorship," *id.* at § 102(a), that was "'fixed' in a tangible medium of expression" and could be "perceived, reproduced, or otherwise communicated," *id.* at § 101. The films, therefore, are within the subject matter of copyright law. *Id.*; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d. Cir. 1997) ("We hold that where the challenged . . . misappropriation relates in part to the copyrighted broadcasts of [basketball] games, the subject matter requirement is met as to both the broadcasts and the [basketball] games."); *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) ("[T]elecasts [of baseball games] are . . . within the subject matter of copyright."); *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1353–54 (N.D. Ga. 2012) (holding that "the video recordings of plaintiff's wrestling activities fall within the subject matter of copyright" and that "the broadcast or recording of the wrestling match is the subject of copyright protection"); *Blood v.*

-4-

*Titan Sports, Inc.*, No. 3:94-CV-307-P, 1997 U.S. Dist. LEXIS 24485, at *33–*34 (W.D.N.C. May 13, 1997) (holding that the Copyright Act preempted wrestler's state-law claims for damages arising from the reproduction and distribution of films of his wrestling performances).

Ray nevertheless argues that his claims are not within the subject matter or ambit of the Copyright Act because ESPN's alleged use of his "likeness" is the true "focal point of this case." In support of his argument, he cites factually distinguishable or inapposite authority, including *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), and *Brown v. Ames*, 201 F.3d 654 (5th Cir. 2000), in which courts found that the Copyright Act did not preempt certain state-law misappropriation or right-of-publicity claims. In *Downing*, the defendant-retailer published a photograph of the surfer-plaintiffs without their permission in the defendant's catalog to promote the defendant's products as part of its surf-themed advertising campaign. 265 F.3d at 1000. The defendant also created and sold t-shirts exactly like those the plaintiffs wore in the photograph. *Id.* As the court noted, "it [was] not the publication of the photograph itself . . . that [was] the basis for [the plaintiffs'] claims, but rather, it [was] the use of the [the plaintiffs'] likenesses and their names pictured in the published photograph." *Id.* at 1003. Indeed, as the court later added, the defendant "went well beyond mere republication of the photograph" and, among other things, "suggested that the surfers had endorsed" the defendant's products. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006) (referring to *Downing*). Similarly, the defendants in *Brown* used the musician-plaintiffs' names and likenesses to sell "cassettes and CD's," "music catalogs," "posters," and "videotapes," 201 F.3d at 656–57, even though the defendants "lacked copyrights" and had received no authorization from the plaintiffs. *Id.* at 656. Notably, the court in *Brown* specifically distinguished *Baltimore Orioles*—and in so doing, distinguished this case as well—on the grounds that "the right of publicity claimed" by the plaintiffs in *Baltimore Orioles* "was essentially a right to prevent rebroadcast of games whose broadcast rights were already owned by" other parties. *Id.* at 659.

-5-

Neither *Downing* nor *Brown* involved an attempt to merely "prevent rebroadcast" of a copyrighted film—unlike this case. ESPN did not use Ray's likeness or name in an advertisement without his permission to promote its commercial products, and, as the district court correctly noted, Ray's "likenesses could not be detached from the copyrighted performances that were contained in the films." Consequently, Ray's attempts on appeal to recast his claims to evade copyright preemption are unavailing. *See also No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1144 (C.D. Cal. 2010) ("A claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." (quotation and citation omitted)); *Fleet v. CBS*, 58 Cal. Rptr. 2d 645, 651 (Cal. Ct. App. 1996) ("[I]t was not merely appellants' likenesses which were captured on film—it was their dramatic performances which are . . . copyrightable. An actor who wishes to protect the use of the image contained in a single, fixed dramatic performance need simply retain the copyright."); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][3][b][iv][II] (2014) (noting that when a performer collaborates in creating a copyrighted work, the performer is barred from "using the right of publicity to squelch exploitation of that copyrighted work for its intended purpose").

## B. *Equivalence of State Rights*

The Copyright Act gives copyright owners "exclusive rights to do and to authorize," among other things, the reproduction of "the copyrighted work in copies or phonorecords"; the preparation of "derivative works based upon the copyrighted work"; the distribution of "copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; and the display of certain "copyrighted work publicly." 17 U.S.C. § 106.

As discussed above, the crux of Ray's case is that ESPN re-telecast Ray's filmed performances. Thus, because Ray's state-law rights have been "'infringed by the mere act of reproduction, performance, distribution or display'" of his performances, his

-6-

state-law rights are equivalent to the exclusive rights "'within the general scope of copyright.'" *Nat'l Car Rental Sys.*, at 431 (quoting 1 *Nimmer on Copyright* § 1.01[B][1]); *see also Laws*, 448 F.3d at 1143 (holding that the Copyright Act preempted a plaintiff's right-of-publicity claim based on the reproduction of a voice recording); *Balt. Orioles*, 805 F.2d at 677 ("[A] right in a work that is conferred by state law is equivalent to the right to perform a telecast of that work if the state-law right is infringed merely by broadcasting the work.").[2]

### III. *Conclusion*

After having thoroughly reviewed all of Ray's arguments on appeal, we affirm the district court's dismissal of Ray's state-law claims as preempted under the Copyright Act.

---

[2] In light of this analysis, we reject Ray's contention that his claim for interference with prospective economic advantage is uniquely beyond the preemptive scope of the Copyright Act or otherwise requires an analysis separate from that of his other state-law claims. *See, e.g., Stromback v. New Line Cinema*, 384 F.3d 283, 306 (6th Cir. 2004) ("Generally, tortious interference claims . . . are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983) (holding that the Copyright Act preempted a tortious interference claim), *rev'd on other grounds*, 471 U.S. 539 (1985).

-7-

Appellate Case: 14-2117   Page: 7   Date Filed: 04/22/2015 Entry ID: 4267493
Case 3:14-cv-01945   Document 279-1   Filed 04/23/15   Page 7 of 7 PageID #: 2499